Fujisaki, J.
*1003 J.M., a minor, entered into a plea agreement, pursuant to which she admitted a felony charge of torture ( Pen. Code, § 206 ). The juvenile court declared J.M. a ward of the court pursuant to Welfare and Institutions Code section 602[1] and committed her to the Department of Corrections and Rehabilitation, Division of Juvenile Justice (also Division of Juvenile Facilities; hereafter DJJ)[2] for a maximum term of seven years, with credit for 206 days in custody. On appeal, J.M. contends the juvenile court did not make certain legally required findings and abused its discretion. J.M. also contends her admission was not voluntary and her counsel rendered ineffective assistance. Moreover, in supplemental briefing, J.M. argues the *193 case should be remanded so that the juvenile court can determine whether to grant her a mental health diversion under Penal Code sections 1001.35 and 1001.36. In a consolidated petition for writ of habeas corpus, J.M. reiterates her claims of ineffective assistance of counsel and involuntary admission.
In the published portion of our opinion, we conclude the mental health diversion law does not apply to juveniles in delinquency proceedings. In the unpublished portion of our opinion, we order that the juvenile court's imposition of a registration fee for the appointment of counsel and the discretionary probation conditions be stricken from the December 4, 2017, disposition order. We also order that the prohibition against J.M. possessing a "weapon" until age 30 be amended to substitute "firearm" for "weapon," consistent with Penal Code section 29820, subdivision (b). The juvenile court is directed to amend its records in a manner consistent with this opinion and to forward copies of all such pertinent documents to the Director of DJJ (see post , part E). We also direct the trial court clerk to correct the date on the notice of appeal (see post , part A, fn. 3). In all other respects, we affirm the disposition order, without prejudice to J.M. raising the issue of additional post-disposition credits in the juvenile court (see post , part D), and we deny the petition for a writ of habeas corpus.
FACTUAL BACKGROUND **
*1004 PROCEDURAL BACKGROUND ***
DISCUSSION
A.-F.†
G. Pretrial Mental Health Diversion
After the conclusion of appellate briefing, J.M. requested, and we granted, leave to file a supplemental letter brief. In her supplemental briefing, J.M. argues the case should be remanded so that the juvenile court can determine whether to grant her a mental health diversion under Penal Code sections 1001.35 and 1001.36. For the reasons below, we conclude that the mental health diversion law does not apply to juveniles in delinquency proceedings, and that this does not violate equal protection.
1. Inapplicability of the Mental Health Diversion Law to Juveniles
Penal Code section 1001.35 specifies that the purpose of the mental health diversion law "is to promote all of the following: [¶] (a) Increased diversion of individuals with mental disorders to mitigate the individuals' entry and reentry into the criminal justice system while protecting public safety. [¶] (b) Allowing local discretion and flexibility for counties in the development and implementation of diversion for individuals with mental disorders across a continuum of care settings. [¶] (c) Providing diversion that meets the unique mental health and support needs of individuals with mental disorders."
Penal Code section 1001.36, subdivision (a), provides for discretionary "pretrial diversion" to a "defendant" suffering from certain mental illnesses who has been charged in an "accusatory pleading" with a misdemeanor or felony. "Pretrial diversion" is defined in relevant part as "the postponement of prosecution, either temporarily or permanently, at any point in the judicial process from the point at which the accused is charged until adjudication, to allow the defendant to undergo mental health treatment." (Id. , subd. (c).)
*194 *1005 In order for a defendant to qualify for diversion, the court must be satisfied that all the following requirements are met: the defendant suffers from a mental disorder as identified in the most recent edition of the Diagnostic and Statistical Manual of Mental Disorders," including PTSD ( § 1001.36, subd. (b)(1)(A) ); the defendant's mental disorder was a significant factor in the commission of the charged offense, based on any relevant and credible evidence (id. , subd. (b)(1)(B)); in the opinion of a qualified mental health expert, the defendant's symptoms of the mental disorder motivating the criminal behavior would respond to mental health treatment (id. , subd. (b)(1)(C)); the defendant consents to diversion and agrees to comply with treatment (id. , subd. (b)(1)(D), (E)); and the defendant will not pose an "unreasonable risk of danger to public safety," as defined in section 1170.18, if treated in the community, based on the opinions of the district attorney, the defense, or a qualified mental health expert, the defendant's violence and criminal history, the current charged offense, and any other factors that the court deems appropriate (id. , subd. (b)(1)(F)).
After ensuring that the defendant meets the above requirements, a trial court may order the defendant into a diversion program for "no longer than two years." ( Pen. Code, § 1001.36, subd. (c)(3).) If the defendant performs satisfactorily in the program, the court must dismiss the underlying charges. (Id. , subd. (e).)
J.M. argues that the new law, as an ameliorative statute, applies retroactively to cases pending on appeal, and that she meets all six eligibility requirements. The People assert that the statute, which became effective June 27, 2018 (Stats. 2018, ch. 34, § 24)-after J.M.'s admission and the dispositional order-does not apply retroactively. The People further contend that the mental health diversion statute, by its terms, does not apply to juvenile cases, and that even if it did, J.M. has not demonstrated a prima facie case of her eligibility.
Whether or not the new mental diversion law applies to juveniles is a matter of statutory interpretation. Thus, " '[o]ur first step is to scrutinize the actual words of the statute, giving them a plain and commonsense meaning.' " ( Garcia v. McCutchen (1997) 16 Cal.4th 469, 476, 66 Cal.Rptr.2d 319, 940 P.2d 906.) "When the statutory language is clear, we need go no further. If, however, the language supports more than one reasonable interpretation, we look to a variety of extrinsic aids, including the objects to be achieved, the evils to be remedied, the legislative history, the statutory scheme of which the statute is a part, and contemporaneous administrative construction, as well as questions of public policy." ( In re Derrick B. (2006) 39 Cal.4th 535, 539-540, 47 Cal.Rptr.3d 13, 139 P.3d 485 ( Derrick B. ).)
*1006 On their face, Penal Code sections 1001.35 and 1001.36 do not state they apply to juvenile proceedings under the Welfare and Institutions Code. Likewise, the legislative history of these code sections makes no mention of their possible applicability to juvenile proceedings.
Penal Code sections 1001.35 and 1001.36 do, however, make frequent use of terminology applicable to "criminal" proceedings. Notably, a juvenile delinquency matter is not criminal in nature (§ 203), and unlike the adult justice system, which seeks to punish, the fundamental purpose of the juvenile justice system is to rehabilitate. ( People v. Vela (2018) 21 Cal.App.5th 1099, 1104, 230 Cal.Rptr.3d 880.) Furthermore, as the Legislature recognized in recently amending Proposition 57 to increase the number of minors retained under juvenile court jurisdiction, the juvenile system is very different from the adult system in *195 terms of the mandatory age-appropriate treatment, services, counseling, and education it provides to minors. (Sen. Com. on Public Safety, Analysis of Sen. Bill No. 1391 (2017-2018 Reg. Sess.) Feb. 16, 2018, p. 4.) "Although courts sometimes consult the Penal Code for guidance in construing procedural statutes appearing in the Welfare and Institutions Code [citations], this doctrine does not sanction the wholesale importation of a procedural Penal Code statute into juvenile court proceedings." ( In re T.C. (2009) 173 Cal.App.4th 837, 850, 93 Cal.Rptr.3d 447.)
In In re M.S. (2019) 32 Cal.App.5th 1177 ( M.S. ), petition for review filed April 17, 2019 (S255274), a majority of the Court of Appeal held that, due to the distinctions between adult criminal prosecutions and juvenile delinquency proceedings, the mental health diversion law does not apply to juvenile cases. ( M.S. , at p. 1192.) These distinctions include the circumstances that: a juvenile proceeding is commenced by the filing of a petition, not a criminal complaint; there are no jury trials in juvenile court, but rather, the court presides over jurisdictional hearings; there are no convictions in juvenile court, and instead, a juvenile court's findings that the petition's allegations are true will bring the juvenile within the court's jurisdiction; and there are no sentences in juvenile court, but rather, "a wide variety of rehabilitation alternatives" may be imposed at a disposition hearing. ( Ibid. ) In short, unlike the adult criminal justice system, in juvenile proceedings "there is [no] accusatory pleading, no possibility of conviction, and no punishment." ( Id. at p. 1193.) M.S. further noted that the primary purpose of the mental health diversion law-"to treat the mentally ill adult outside the criminal justice system rather than to punish them inside the system"-is unnecessary for juveniles because the juvenile justice system "is already separate and distinct from the criminal justice system." ( Ibid. )
J.M. argues M.S. was incorrectly decided for two reasons. First, citing In re Jovan B. (1993) 6 Cal.4th 801, 25 Cal.Rptr.2d 428, 863 P.2d 673 ( Jovan B. )
*1007 and its progeny, J.M. contends M.S. failed to address Jovan B. 's holding that the use of adult procedural terms in a criminal statute does not demonstrate legislative intent to exclude juveniles from the scope of the statute. Second, J.M. argues M.S. failed to address equal protection concerns raised by denial of the benefits of the mental health diversion program to juveniles.
In Jovan B. , the California Supreme Court held that Penal Code section 12022.1 -which increases the period of imprisonment for a felony committed while the offender is out on bail or on his or her own recognizance (O.R.)-applies to juvenile delinquency proceedings. In so holding, Jovan B. concluded that the statute's use of criminal terminology, i.e., information, indictment, complaint, preliminary hearing, and sentencing, "cannot be dispositive of the question of whether the bail/O.R. enhancement applies to juvenile wards." ( Jovan B. , supra , 6 Cal.4th at p. 812, 25 Cal.Rptr.2d 428, 863 P.2d 673.) Observing that Welfare and Institutions Code section 726 expressly adopts the Penal Code's system of enhancements for purposes of computing a juvenile's maximum confinement or commitment, Jovan B. determined that section 726 intends to fully apply the enhancement scheme to juveniles "except insofar as the focus of a particular enhancement is manifestly at odds with the principles of juvenile law." ( Jovan B. , at p. 813, 25 Cal.Rptr.2d 428, 863 P.2d 673.) Jovan B. found that the criminal terminology in Penal Code section 12022.1 had "no special technical significance" and that the concerns leading to the enhancement statute applied equally to juvenile *196 and adult offenses. ( Jovan B. , at pp. 813-814, 25 Cal.Rptr.2d 428, 863 P.2d 673.)
The Supreme Court distinguished Jovan B. in Derrick B. , supra , 39 Cal.4th 535, 47 Cal.Rptr.3d 13, 139 P.3d 485. Derrick B. addressed Penal Code section 290, former subdivisions (a)(2)(A), which required sex offender registration for various offenses including sexual battery, and (a)(2)(E), which authorized a court to require registration in connection with unlisted offenses if the court made certain findings and stated reasons for the imposition. In holding that these registration provisions did not apply to juvenile proceedings, Derrick B. observed that a different subdivision pertaining to juveniles- Penal Code section 290, former subdivision (d)(3)-contained its own list of specific sex offenses requiring juvenile sex offender registration, and that such list did not include sexual battery. ( Derrick B. , supra , 39 Cal.4th at p. 546, 47 Cal.Rptr.3d 13, 139 P.3d 485.) Hence, unlike the situation in Jovan B. , there was "no broader context to expand upon the clear language chosen by the Legislature." ( Derrick B. , at p. 543, 47 Cal.Rptr.3d 13, 139 P.3d 485.)
Applying these principles to the instant matter, we agree with J.M. that the use of adult criminal terminology in the mental health diversion law is not, by itself, dispositive of whether Penal Code sections 1001.35 and 1001.36 exclude juveniles. But the analysis does not end there. Derrick B. instructs us to look to the broader context of the statutory structures involved, especially where, as here, the clear language chosen by Legislature acknowledges *1008 the differences between them. In the cases that J.M. cites which follow Jovan B. , the Legislature's intent to apply a Penal Code provision to juvenile delinquency proceedings is evinced in the broad context of the statutory schemes and consistent with their existing interplay. Thus, in Alejandro N. v. Superior Court (2015) 238 Cal.App.4th 1209, at pages 1223-1226, 189 Cal.Rptr.3d 907, disapproved on other grounds in In re C.B. (2018) 6 Cal.5th 118, 125, 129-130, 237 Cal.Rptr.3d 471, 425 P.3d 40, the court held that the offense reclassification provisions of Penal Code section 1170.18 apply to Welfare and Institutions Code section 602, because section 602 incorporates the entire body of laws defining criminal offenses as the basis for juvenile wardship jurisdiction. And in In re E.G. (2016) 6 Cal.App.5th 871, at pages 880-881, Division Five of this district held that Penal Code section 17, subdivision (b)(3), which provides that a "wobbler" offense is a misdemeanor when the court grants probation without imposition of a sentence, applies to juvenile proceedings because Welfare and Institutions Code sections 702 and 726 require a minor's maximum term of confinement be linked to the adult criminal sentencing laws.
The instant matter, however, is more akin to Derrick B. because juvenile courts are expressly required to consider " ' "the broadest range of information" in determining how best to rehabilitate a minor and afford him [of her] adequate care.' " ( In re Carlos J. , 22 Cal.App.5th 1, 7, 231 Cal.Rptr.3d 160.) Ensuring access to needed mental health treatment is part of the juvenile court's overarching responsibility to provide minors alleged to be wards with the necessary "care, treatment, and guidance that is consistent with their best interest, that holds them accountable for their behavior, and that is appropriate for their circumstances." (§ 202, subd. (b).). Moreover, the Juvenile Court Law has its own independent scheme for addressing minors alleged to be wards with serious mental disorders and other emotional and developmental issues. (§§ 710-713.)
*197 Were we to construe the mental health diversion law as applying to juveniles, it would conflict with or infringe upon these and other provisions specifically contemplated by the Legislature to provide an appropriate and comprehensive course of treatment and rehabilitation for juveniles. (§§ 202, 710-713, 790-796.) As discussed, a mental health diversion program under Penal Code section 1001.36 may postpone the adjudication of charges for up to two years. ( Pen. Code, § 1001.36, subd. (c).) Allowing a juvenile to be siphoned off into the mental health diversion program in this fashion would thus serve to stall a comprehensive disposition that beneficially and timely addresses the juvenile's other rehabilitation needs, such as education, counseling, and discipline.
Moreover, we note the Juvenile Court Law's deferred judgment provisions (§§ 790-796) resemble a diversion scheme in many respects-i.e., *1009 providing for "treatment, and rehabilitation efforts" (§ 790, subd. (b)); abating the adjudicatory process ( In re Mario C. (2004) 124 Cal.App.4th 1303, 1308, 21 Cal.Rptr.3d 891 ); and potentially resulting in dismissal of the charges in the wardship petition upon satisfactory completion of the assigned program (§ 793, subd. (c))-except in the critical respect that it is not available where the offense charged is enumerated in section 707, subdivision (b), which includes torture. (§ 790, subd. (a)(2); § 707, subd. (b)(23).) In other words, the Legislature, in crafting the deferred judgment program under the Welfare and Institutions Code, did not intend to allow diversion for juveniles charged with offenses listed in section 707, subdivision (b), while the diversion program authorized in the Penal Code does in fact permit diversion for defendants charged with at least some of those offenses.[12] Extending the reach of Penal Code sections 1001.35 and 1001.36 to juveniles would thus conflict with the Legislature's intent to limit the availability of diversion but to timely extend rehabilitative services for certain juveniles. In the absence of a clear expression of legislative intent, we are not persuaded the Legislature meant to abandon such differences between the adult and juvenile statutory schemes. ( Derrick B. , supra , 39 Cal.4th at p. 546, 47 Cal.Rptr.3d 13, 139 P.3d 485.)
J.M. contends the failure to find Penal Code sections 1001.35 and 1001.36 applicable to juveniles will impermissibly result in the imposition of harsher punishments on juveniles. Relying on Welfare and Institutions Code section 726, subdivision (d)(1), she argues that a minor who committed torture would have to serve an entire sentence at DJJ, while an adult who successfully completes the diversion program for the same offense would serve no time at all. That reliance is misplaced. Such circumstances do not violate section 726, subdivision (d)(1), because that statute simply provides that a ward may not be held in physical confinement in excess of the maximum term of imprisonment that could be imposed upon an adult convicted of the same offense. (Compare Welf. & Inst. Code, § 607, subd. (f) [discharge upon expiration of two-year period of control or when person attains age 23] with Pen. Code, § 206.1 [torture punishable by life imprisonment].)
In sum, we conclude juveniles who are not charged as adults are not statutorily eligible for the mental health program under Penal Code sections 1001.35 and *198 1001.36. Disallowing adult-focused mental health diversion to juveniles promotes, rather than detracts from, the existing rehabilitative and *1010 mental health resources available under the Juvenile Court Law, while properly maintaining the legislatively-enacted distinctions between the two systems.[13]
2. Equal Protection
J.M. next argues that excluding juveniles from the mental health diversion law available to adult offenders would violate the equal protection guarantees in the Fourteenth Amendment to the United States Constitution and article I, section 7, of the California Constitution.
The constitutional guarantee of equal protection " 'does not preclude the state from drawing any distinctions between different groups of individuals, but does require that, at a minimum, classifications which are created bear a rational relationship to a legitimate public purpose. [Citations.] Moreover, "in cases involving 'suspect classifications' or touching on 'fundamental interests' ... the state bears the burden of establishing not only that it has a compelling interest which justifies the law but that distinctions drawn by the law are necessary to further its purpose." ' " ( People v. Smith (2011) 198 Cal.App.4th 415, 434, 129 Cal.Rptr.3d 910.) Where a disputed statutory disparity does not involve a suspect classification or the alleged infringement of a fundamental interest, equal protection of the law is denied only where there is no " 'rational relationship between the disparity of treatment and some legitimate governmental purpose.' " ( Johnson v. Department of Justice (2015) 60 Cal.4th 871, 881, 183 Cal.Rptr.3d 96, 341 P.3d 1075 ( Johnson ).)
We assume, for purposes of our equal protection analysis, that juveniles in the juvenile justice system are, as a group, similarly situated to adults in criminal court with regard to their interest in accessing mental health treatment and potential pretrial diversion. Although juveniles have not been recognized as a suspect class, J.M. argues the strict scrutiny test applies because a fundamental interest (personal liberty) is at stake. Relying on People v. Olivas (1976) 17 Cal.3d 236, 131 Cal.Rptr. 55, 551 P.2d 375 ( Olivas ), J.M. essentially reasons that if juveniles are excluded from the application of Penal Code sections 1001.35 and 1001.36, then she will be subject to a longer period of incarceration than similarly-situated adults to whom those code sections apply. We are not persuaded.
At issue in Olivas was a statute that granted a trial court discretion to commit a defendant who was between 16 and 21 years of age and was *1011 convicted in an adult criminal prosecution to the California Youth Authority for a term longer than he or she would have received had the defendant been sentenced as an adult. Olivas concluded that statute triggered application of the strict scrutiny standard because the defendant's fundamental interest in personal liberty was at stake. ( Olivas , supra , 17 Cal.3d at pp. 250-251, 131 Cal.Rptr. 55, 551 P.2d 375.) Importantly, however, the Supreme Court later clarified that Olivas does not mandate application of the strict scrutiny standard in every equal protection challenge where the adult and juvenile statutory schemes provide different *199 consequences for comparable crimes. ( People v. Wilkinson (2005) 33 Cal.4th 821, 837, 16 Cal.Rptr.3d 420, 94 P.3d 551 ( Wilkinson ).) " 'There is language in the Olivas opinion that emphasizes the narrowness of the holding. For instance, the court noted that [the statute in question] was constitutionally infirm because persons committed under the statute had been "prosecuted as adults, adjudged by the same standards which apply to any competent adult, and convicted as adults in adult courts." [Citation.] This language requires only that the boundaries between the adult and juvenile criminal justice systems be rigorously maintained.' " ( Wilkinson , at pp. 837-838, 16 Cal.Rptr.3d 420, 94 P.3d 551.) Accordingly, Olivas provides no authority for applying the strict scrutiny standard where, as here, the juvenile has always been within the juvenile justice system, and the boundaries between the adult and juvenile systems have been maintained throughout.
Applying the rational basis standard, we conclude J.M. fails to demonstrate an equal protection violation. " 'This standard of rationality does not depend upon whether lawmakers ever actually articulated the purpose they sought to achieve. Nor must the underlying rationale be empirically substantiated. [Citation.] While the realities of the subject matter cannot be completely ignored [citation], a court may engage in " 'rational speculation' " as to the justifications for the legislative choice [citation]. It is immaterial for rational basis review "whether or not" any such speculation has "a foundation in the record." ' [Citation.] To mount a successful rational basis challenge, a party must ' "negative every conceivable basis" ' that might support the disputed statutory disparity. [Citation.] If a plausible basis exists for the disparity, courts may not second-guess its ' "wisdom, fairness, or logic." ' " ( Johnson , supra , 60 Cal.4th at p. 881, 183 Cal.Rptr.3d 96, 341 P.3d 1075.)
As discussed, there are material differences between the adult and juvenile justice schemes with regard to their underlying purposes and to the treatment of offenders with mental health issues. (See ante , part G.1.) Thus, the Legislature could rationally devise and maintain a separate statutory scheme for juveniles that addresses their rehabilitative needs in delinquency proceedings and provides different criteria for potential diversion. (Ibid. ) Because J.M. makes no meaningful attempt to negate every conceivable basis that might support the disputed statutory disparities, her equal protection claim fails.
*1012 H. Habeas Corpus Petition (A156093)††
DISPOSITION
We strike the imposition of the registration fee and the discretionary probation conditions from the December 4, 2017, disposition order. We also order that the prohibition against J.M. possessing a "weapon" until age 30 be amended to substitute "firearm" for "weapon," consistent with Penal Code section 29820, subdivision (b). The juvenile court is directed to amend its records in a manner consistent with this opinion (see ante , part E) and to forward copies of all such pertinent documents to the Director of DJJ. We also direct the trial court clerk to correct the date on the notice of appeal (see ante , part A, fn. 3). In all other respects, the disposition order is affirmed, without prejudice to J.M. raising the issue of additional post-disposition credits in the juvenile court (see ante , part D).
*200 The petition for a writ of habeas corpus is denied.
WE CONCUR:
Siggins, P.J.
Petrou, J.

Undesignated statutory references are to the Welfare and Institutions Code. Under section 602, "any minor who is between 12 years of age and 17 years of age, inclusive, when he or she violates any law of this state ... is within the jurisdiction of the juvenile court, which may adjudge the minor to be a ward of the court." (§ 602, subd. (a).)

The Department of Juvenile Facilities (DJF) is part of the DJJ, which in turn is part of the Department of Corrections and Rehabilitation. (In re D.J. (2010) 185 Cal.App.4th 278, 280, fn. 1, 110 Cal.Rptr.3d 261.) The parties refer to the authority to which J.M. was committed as either the DJF or DJJ. For consistency, we will refer to it as the DJJ.

See footnote *, ante .

See footnote *, ante .

See footnote *, ante .

For example, Penal Code section 1001.36, subdivision (b)(2), provides that a defendant charged with various enumerated offenses (i.e., murder, voluntary manslaughter, rape, etc.) may not be placed into a diversion program, but torture (Pen. Code, § 206 ) is not included in the list of offenses precluding diversion.

In light of our conclusion regarding the inapplicability of the mental health diversion law to juveniles, we need not reach the issue of retroactivity, which is currently under review by the Supreme Court. (People v. Frahs , review granted Dec. 27, 2018, S252220 ; People v. McDonald , review granted Apr. 17, 2019, S254030.)

See footnote *, ante .