Filed 4/9/21  P. v. Lua CA1/4

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>ALFONSO LUA,<br><br>        Defendant and Appellant. | A158254<br><br>(Contra Costa County<br>Super. Ct. No. 5-100485-5) |

Alfonso Lua pled no contest to voluntary manslaughter in 2017.  He filed a petition to vacate his conviction under Penal Code section 1170.95, which allows certain defendants convicted of murder under the felony-murder rule or the natural and probable consequences doctrine to seek resentencing.  (All undesignated statutory citations are to the Penal Code.)  The trial court denied the petition, ruling that only those convicted of murder are eligible for relief under section 1170.95.  We agree with the trial court that section 1170.95 does not provide relief for those convicted of manslaughter, and accordingly we affirm.

### BACKGROUND

## I.  Underlying Offense and Plea

Based on an incident that occurred in May 2009, the Contra Costa County District Attorney charged Alfonso Lua and a codefendant with three

1

crimes: conspiracy to commit robbery (§§ 182, subd. (a)(1), 211; count 1), murder (§ 187; count 2), and second degree robbery (§§ 211 & 212.5, subd. (c); count 3). The information included gang and firearm enhancements. (§§ 186.22, subd. (b)(1), 12022.53.) After a jury was unable to reach a verdict on any of these counts, the trial court declared a mistrial and Lua entered into a negotiated disposition. Although the record of the earlier proceedings is sparse, the parties agree that in 2017 Lua pled no contest to voluntary manslaughter (§ 192, subd. (a)) and admitted gang and firearm enhancements (§§ 186.22, subd. (b)(1)(C), 12022.1, subd. (a)). Lua received a sentence of 20 years for the manslaughter and enhancements and a consecutive three-year term for a robbery charge arising from a separate incident.

On March 22, 2019, Lua filed a petition for resentencing pursuant to section 1170.95. The trial court denied Lua's petition, concluding that one convicted of manslaughter is ineligible for resentencing under section 1170.95.

## II. Senate Bill No. 1437

In 2018, the Legislature passed Senate Bill 1437, which amended the felony-murder rule and the natural and probable consequences doctrine as it relates to murder. (Stats. 2018, ch. 1015, §§ 1–3; see *People v. Lamoureux* (2019) 42 Cal.App.5th 241, 248.) The bill narrowed murder liability under section 188 to require that a principal act with malice aforethought; malice can no longer be "imputed to a person based solely on his or her participation in a crime." (§ 188, subd. (a)(3).) The effect of this amendment is that a defendant may no longer be "convicted of second degree murder under a theory that the defendant aided and abetted a crime, the natural and probable consequence of which was murder." (*People v. Gentile* (2020) 10

2

Cal.5th 830, 843.) Senate Bill 1437 also amended section 189 by limiting felony-murder liability to require that a defendant (1) be the actual killer, (2) intend to kill, or (3) be a major participant in the underlying felony acting with reckless indifference to human life. (§ 189, subd. (e).)

In the same bill, the Legislature enacted section 1170.95, which authorizes persons previously "convicted of felony murder or murder under a natural and probable consequences theory" to file a petition to have their "murder conviction vacated and to be resentenced on any remaining counts." (§ 1170.95, subd. (a).) Section 1170.95 applies where all of the following conditions are met: (1) the charges filed against the petitioner "allowed the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine"; (2) "[t]he petitioner was convicted of first degree or second degree murder following a trial or accepted a plea offer in lieu of a trial at which the petitioner could be convicted for first degree or second degree murder"; and (3) the petitioner could not now be convicted of first or second degree murder because of Senate Bill 1437's changes to sections 188 or 189. (§ 1170.95, subd. (a).) If the petitioner makes a prima facie showing of eligibility for relief under section 1170.95, he or she is entitled to a hearing to determine whether to vacate the murder conviction. (§ 1170.95, subd. (c).) The court then holds an evidentiary hearing to determine whether the murder conviction should be vacated. (§ 1170.95, subd. (d).)

## DISCUSSION

### I. Section 1170.95 Does Not Apply to Manslaughter

Lua contends that eligibility for relief under section 1170.95 extends not only to those convicted of murder under a qualifying doctrine, but also to those who accepted a plea of manslaughter to avoid such a murder conviction.

(§ 1170.95, subd. (a)(1).) As we shall explain, we conclude relief is available under section 1170.95 only to one convicted of murder.

The question Lua raises is one of statutory interpretation, which we review independently. (See *People v. Prunty* (2015) 62 Cal.4th 59, 71.) "[O]ur primary task is to give effect to the Legislature's intended purpose in enacting the law." (*People v. Hubbard* (2016) 63 Cal.4th 378, 386) "We begin with the statute's text, assigning the relevant terms their ordinary meaning, while also taking account of any related provisions and the overall structure of the statutory scheme. [Citation.] Essential is whether our interpretation, as well as the consequences flowing therefrom, advances the Legislature's intended purpose. [Citation.] Where the statutory text admits of more than one reasonable interpretation, we may consider various extrinsic aids— including the legislative history—to the extent they are helpful in illuminating that purpose." (*Ibid.*)

By its terms, section 1170.95 applies only to those convicted of murder. That is, it authorizes "[a] person convicted of felony murder or murder under a natural and probable consequences theory" to file a petition "to have the petitioner's *murder* conviction vacated" if the three specified conditions apply (§ 1170.95, subd. (a), italics added), and provides for the court to determine whether to vacate the petitioner's "murder conviction" (*id.*, subd. (d)). Nowhere does section 1170.95 address those convicted of manslaughter.

Lua acknowledges he was not convicted of murder, but nevertheless contends he is eligible for relief because of language in the second condition of eligibility—that "[t]he petitioner was convicted of first degree or second degree murder following a trial *or accepted a plea offer in lieu of a trial* at which the petitioner could be convicted for first degree or second degree

4

murder." (§ 1170.95, subd. (a), italics added.)  Lua argues this reference to a plea offer is not limited to those convicted of murder.

This argument has been roundly rejected by every appellate court to have considered it.  We are guided by the decision of our colleagues in Division Two of the First Appellate District, which recently considered this issue and concluded section 1170.95 does not apply to manslaughter.  (*People v. Paige* (2020) 51 Cal.App.5th 194, 202 (*Paige*).)  The court explained:  "Read in isolation, section 1170.95, subdivision (a)(2) could be misinterpreted to be as expansive as Paige argues it is.  But read in the context of the statute as a whole, considering both its structure and its language, subdivision (a)(2) cannot reasonably be understood to encompass persons who accept a plea offer . . . for a crime other than murder.  The first paragraph of section 1170.95, subdivision (a) sets forth the basic 'who' and 'what' of the statute— who may seek relief and what they may seek.  The 'who' is '[a] person *convicted of felony murder or murder under a natural and probable consequences theory*' and the 'what' is the opportunity to 'file a petition with the court . . . *to have the petitioner's murder conviction vacated.*' "  (*Ibid.*) Lua's argument ignores this introductory language, which establishes the boundaries of who is eligible for resentencing before setting further conditions for that eligibility.

Every other court to have considered this issue agrees that section 1170.95 applies only to those convicted of murder.  (See *People v. Harris* (2021) 60 Cal.App.5th 557, 566 (*Harris*) [section 1170.95 does not apply to defendants who pled guilty to voluntary manslaughter or attempted murder]; *People v. Sanchez* (2020) 48 Cal.App.5th 914, 917–920 (*Sanchez*) [section 1170.95 does not apply to those who pled guilty to voluntary manslaughter]; *People v. Turner* (2020) 45 Cal.App.5th 428, 435–436 (*Turner*) [same]; *People*

5

*v. Flores* (2020) 44 Cal.App.5th 985, 993 [same]; *People v. Cervantes* (2020) 44 Cal.App.5th 884, 887 (*Cervantes*) [section 1170.95 does not apply to those who pled no contest to voluntary manslaughter].)

Lua argues, however, that if the Legislature had intended to limit relief to those who pled to murder, it would have included the word murder when referring to one who "accepted a plea offer in lieu of a trial" for murder. (§ 1170.95, subd. (a)(2).)  But *Paige* explains that we must construe subdivision (a)(2) "in the context of the statute as a whole, considering both its structure and language."  (*Paige, supra,* 51 Cal.App.5th at p. 202.)  Section 1170.95, subdivision (a) by its terms applies only to those convicted of murder, so adding an express requirement that any plea be for murder would have been unnecessary.  The reference to a person who "accepted a plea offer" necessarily means a person who accepted a plea offer and pled guilty or no contest to murder.

In furtherance of his argument, Lua points out that the Legislative Counsel's Digest for Senate Bill 1437 notes that resentencing is available to those who were sentenced for first or second degree murder " 'or accepted a plea offer in lieu of a trial' " at which the defendant could be convicted of murder.  Even if we were to look past the unambiguous text of the statute, we would reject Lua's contention.  The *Turner* court engaged in a robust analysis of Senate Bill No. 1437's legislative history.  *Turner* observed that "the Legislature understood the distinction between murder and manslaughter and focused its efforts on revising accomplice liability" for certain murder convictions, and that "every committee report and analysis made note of the life sentences imposed for defendants convicted of first- or second-degree murder."  (*Turner*, at pp. 437–438.)  *Turner* concluded that the Legislature

did not intend the section to apply to those facing murder who pled to manslaughter.  (*Id.* at p. 438.)  Lua offers nothing to dispute this conclusion.

Lua additionally contends that the statute's reference to those facing trial at which they could be sentenced to second degree murder implicitly includes those who plead to manslaughter, because one charged with second degree murder would not agree to plead guilty to that very count.  This contention is without merit, as a person charged with second degree murder might plead guilty to second degree murder as part of a plea agreement in which further charges or enhancements are dismissed.

Lua also clings to language in an uncodified portion of Senate Bill 1437 describing the purpose of the bill as to "more equitably sentence offenders in accordance with their involvement in *homicides*."  (Sen. Bill 1437, § 1, subd. (b), italics added.)  But the same uncodified portion of the bill states the amendments are "necessary . . . to ensure that *murder* liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life."  (*Id.*, subd. (f), italics added.)

Lua argues that it is inequitable to exclude him from the benefit of section 1170.95 because his decision to plead no contest to manslaughter might have been driven not by guilt of that crime, but by the desire to avoid a possible murder conviction that would lead to an indeterminate life term.  The court in *Turner* considered a similar argument, acknowledging that the defendant "seems worse off for pleading guilty to a crime he likely could not have committed" because neither the felony-murder rule nor the natural and probable consequences doctrine supports a voluntary manslaughter conviction.  (*Turner*, *supra*, 45 Cal.App.5th at pp. 439–440.)  Nevertheless, the court concluded, by pleading guilty to voluntary manslaughter the

7

defendant "admitt[ed] every element of that offense"; if there was a problem, it lay in the " 'factual basis for the plea,' " a matter that was not before the court on a petition for resentencing under section 1170.95. (*Turner,* at pp. 439–440.) The same is true here. Like the court in *Turner*, we are sensitive to Lua's point that in pleading no contest to manslaughter he may have placed himself in a worse position than had he pled guilty to murder and been able now to bring a successful petition under section 1170.95, but we are "constrained to conclude Senate Bill 1437 does not provide him an avenue for relief." (*Turner,* at pp. 440–441.)

Lua also argues we should apply the rule of lenity, under which "ambiguities in penal statues are to be construed most favorably to the accused." (*People v. Woodhead* (1987) 43 Cal.3d 1002, 1011.) However, the rule of lenity applies "only if two reasonable interpretations of the statute stand in relative equipoise" (*People v. Anderson* (2002) 28 Cal.4th 767, 780), and here the text is clear. Lua's interpretation of the statute, for the reasons we have explained, is not plausible. Section 1170.95 applies only to those convicted of murder.

**II. Equal Protection**

Lua submits that interpretating section 1170.95 to encompass only those convicted of murder, as *Paige* and other appellate courts have done, results in the denial of equal protection of the laws. Lua further argues strict scrutiny applies because a fundamental interest, personal liberty, is at stake.

" 'The first prerequisite to a meritorious claim under the equal protection clause is a showing that the state has adopted a classification that affects two or more similarly situated groups in an unequal manner.' " (*Cooley v. Superior Court* (2002) 29 Cal.4th 228, 253, italics omitted.) "This initial inquiry is not whether persons are similarly situated for all purposes,

but 'whether they are similarly situated for purposes of the law challenged.' " (*Ibid.*) "The constitutional guarantee of equal protection ' "does not preclude the state from drawing any distinctions between different groups of individuals, but does require that, at a minimum, classifications which are created bear a rational relationship to a legitimate public purpose." ' " (*In re J.M.* (2019) 35 Cal.App.5th 999, 1010.) Where cases involve " 'suspect classifications' " or touch on " 'fundamental interests' " more is required; the state must establish that it has a compelling interest that justifies the law and any distinction between persons is necessary to further that aim. (*People v. Smith* (2011) 198 Cal.App.4th 415, 434.)

Lua's argument fails because he cannot meet the baseline requirement of an equal protection claim. Every appellate court to have addressed this issue has persuasively concluded a defendant convicted of manslaughter is not similarly situated to one convicted of murder for purposes of section 1170.95, and the Legislature could rationally treat the two groups of defendants differently. (See, e.g., *Sanchez, supra,* 48 Cal.App.5th at p. 920; *Paige, supra,* 51 Cal.App.5th at p. 205; *Cervantes, supra,* 44 Cal.App.5th at p. 888.) The Legislature's focus when considering Senate Bill 1437 was on the "unfairness of the felony murder rule" (*Cervantes*, at p. 888) and the related doctrine of natural and probable consequences, particularly as these two doctrines impute the malice of the killer to an individual who was not the actual killer nor a major participant in the crime. (Stats. 2018, ch. 1015, § 1, subds. (d), (e) & (f).) A conviction for voluntary manslaughter cannot be obtained under either the felony-murder rule or the natural and probable consequences doctrine; voluntary manslaughter requires "an intentional and unlawful killing without malice." (*Turner, supra,* 45 Cal.App.5th at p. 439.) Therefore, a Legislature concerned about the potential unfairness of these

9

two doctrines has no need to address convictions for voluntary manslaughter alongside those for murder. "The Legislature could rationally decide to change the law in this area and not be currently concerned with crimes not involved with [the felony-murder] rule." (*Cervantes*, at p. 888.) Moreover, murder is punished with a mandatory indeterminate sentence of 15 or 25 years to life, considerably longer than the three- to eleven-year sentence meted out for voluntary manslaughter. (§§ 190, subd. (a); 193, subd. (a); *Turner,* at p. 439.) The Legislature could rationally decide that the risk of unfair sentences is greater, and the legislative reform should therefore be limited to, those whose crimes carry the longer, life sentence.

Lua objects that we should apply strict scrutiny here, citing *People v. McKee* (2012) 207 Cal.App.4th 1325, but *McKee* is inapplicable. The court there determined that strict scrutiny applied in claims of " 'disparate treatment in *civil* commitment.' " (*Id.* at p. 1335, italics added.) In the criminal context, "where the issue is not whether a deprivation of an individual's liberty will occur, but rather the duration of that deprivation, rational basis review is appropriate." (*People v. K.P.* (2018) 30 Cal.App.5th 331, 343; see also *People v. Wilkinson* (2004) 33 Cal.4th 821, 838.) Courts considering an equal protection challenge to section 1170.95 have accordingly applied rational basis review in rejecting the challenge. (*Sanchez, supra,* 48 Cal.App.5th at p. 921; see also *Harris, supra*, 60 Cal.App.5th at p. 571.) As explained in *Sanchez*, "the Legislature could have reasonably concluded 'that the punishment for voluntary manslaughter was appropriate, but the punishment for murder based on the [felony murder or the natural and

probable consequences theory] could be excessive and reform was needed only there.' " (*Sanchez,* at p. 921.)

## DISPOSITION

The order denying Lua's petition for resentencing under section 1170.95 is affirmed.


TUCHER, J.


WE CONCUR:

POLLAK, P. J.
BROWN, J.