Filed 8/28/24

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C098871 |
| Plaintiff and Respondent, | (Super. Ct. No. JV138181) |
| v. | |
| I.B., | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Sacramento County, Paul L. Seave, Judge. Affirmed.

Courtney M. Selan, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Ivan P. Marrs and Edrina Anderson, Deputy Attorneys General, for Plaintiff and Respondent.

The Legislature in the past few years has overhauled certain juvenile court laws through juvenile justice realignment. The realignment included closing Department of

1

Corrections and Rehabilitation, Division of Juvenile Justice (DJJ) and transferring DJJ's responsibilities to county facilities.

Under Penal Code section 290.008 (undesignated section references are to the Penal Code), minors who were committed to DJJ before juvenile justice realignment for certain sex offenses, including assault with intent to commit rape, must register as sex offenders on discharge even after DJJ's closure. But this section does not apply to minors who commit the same offenses after juvenile justice realignment.

Minor I.B. was committed to DJJ for two counts of assault with intent to commit rape. At his reentry hearing, the juvenile court imposed a probation condition requiring him to register as a sex offender under section 290.008. On appeal, minor challenges section 290.008 on equal protection grounds for its alleged unjustifiable differential treatment of minors like him and minors who are later committed to county facilities. He also urges us to apply the strict scrutiny standard in reviewing his challenge.

We reject these arguments. The rational basis standard applies because the sex offender registration requirement for minor does not involve a loss of liberty and thus does not implicate a fundamental right. And a rational basis exists to justify the differential treatment of minors already in DJJ's custody and minors later committed to county facilities, because the Legislature could have determined the latter have a lower risk of recidivism due to more effective treatment. We affirm the dispositional order.

FACTUAL AND PROCEDURAL BACKGROUND

In 2017, minor admitted two counts of assault with intent to commit rape (§ 220). The juvenile court committed minor to a Level B placement. After minor completed his Level B placement program, the juvenile court committed him to DJJ in 2019 due to multiple probation violations.

Minor was discharged from DJJ in April 2023. At minor's reentry disposition hearing, the juvenile court terminated DJJ's jurisdiction and granted minor formal probation. Minor's counsel objected to a probation condition that required minor to

register as a sex offender pursuant to section 290 et seq., arguing it violated minor's equal protection rights. The juvenile court declined to modify the condition.

Minor timely appealed.

DISCUSSION

Minor contends section 290.008 violates his state and federal equal protection rights because there are no substantive distinctions between him and minors who later commit the same crime but are sent to county facilities under the new law. He urges us to apply the strict scrutiny standard in reviewing his claim because he has a fundamental interest at stake. After a de novo review (*In re M.B.* (2024) 99 Cal.App.5th 435, 465), we disagree with these contentions.

I

*Juvenile Justice Realignment Background*

A. *The Closure of DJJ*

Until recently, DJJ was "the state's most restrictive placement for its most severe juvenile offenders." (*In re Miguel C.* (2021) 69 Cal.App.5th 899, 902.) In 2020, the Legislature passed Senate Bill No. 823 (2019-2020 Reg. Sess.) (Stats. 2020, ch. 337) as part of its juvenile justice realignment efforts. (*Miguel C.*, at p. 907.) Those efforts "included the transfer of DJJ's responsibilities to California's counties beginning [] July 1, 2021 (§ 736.5, subd. (a)) and the closure of DJJ on June 30, 2023 ([§ 736.5], subd. (e))." (*In re M.B., supra*, 99 Cal.App.5th at p. 448.) Beginning July 1, 2021, a ward shall not be committed to DJJ except in criminal transfers. (Welf. & Inst. Code, § 736.5, subds. (b), (c).)

In making these changes, the Legislature noted "[e]vidence has demonstrated that justice system-involved youth are more successful when they remain connected to their families and communities. Justice system-involved youth who remain in their communities have lower recidivism rates and are more prepared for their transition back into the community." (Stats. 2020, ch. 337, § 1(a).) Therefore, realignment aims to

3

"ensure that justice-involved youth are closer to their families and communities and receive age-appropriate treatment." (Stats. 2020, ch. 337, § 1(b).)

## B.     Section 290.008

Under section 290.008, subdivisions (a) and (c)(1), "[a]ny person who . . . is discharged or paroled from [DJJ] . . . because of" the commission of certain sex crimes, including assault with intent to commit rape, must register as a sex offender. Subdivision (d) of section 290.008 provides for tiered periods of registration. The registration requirements under section 290.008 apply only to a minor committed to and either discharged or paroled from the DJJ. (*In re T.O.* (2022) 84 Cal.App.5th 252, 265.)

After the passage of Senate Bill No. 823, the Legislature amended section 290.008 to add, among other things, subdivision (h) that defines a discharged person. The purpose of the amendment was to "[c]larif[y] that youth currently in the custody of [DJJ] who are required to complete . . . sex offender registration upon discharge will still be required to do so after the closure of [DJJ]." (Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Assem. Bill No. 160 (2021-2022 Reg. Sess.) as amended August 26, 2022, p. 3.)

## II

### *Degree of Justification*

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." (*City of Cleburne, Tex. v. Cleburne Living Center* (1985) 473 U.S. 432, 439.) "The Fourteenth Amendment's guarantee of equal protection and the California Constitution's protection of the same right (Cal. Const., art. I, § 7, subd. (a), art. IV, § 16, subd. (a)) are substantially equivalent . . . ." (*Kenneally v. Medical Board* (1994) 27 Cal.App.4th 489, 495.) "At core, the requirement of equal protection ensures that the government does not

4

treat a group of people unequally without some justification." (*People v. Chatman* (2018) 4 Cal.5th 277, 288.)

"The degree of justification required to satisfy equal protection depends on the type of unequal treatment at issue. Courts apply [a] heightened scrutiny when a challenged statute or other regulation involves a suspect classification such as race, or a fundamental right such as the right to vote, and accordingly will demand greater justification for the differential treatment. [Citations.] But when a statute involves neither a suspect classification nor a fundamental right, the 'general rule is that legislation is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest.' [Citations.] A court applying this standard finds 'a denial of equal protection only if there is no *rational* relationship between a disparity in treatment and some legitimate government purpose.' " (*People v. Hardin* (2024) 15 Cal.5th 834, 847.) Personal liberty is a fundamental right. (*People v. Olivas* (1976) 17 Cal.3d 236, 245, 251.)

The mandatory lifetime sex offender registration imposed by section 290 does not involve "loss of liberty" and therefore does not implicate a fundamental right. (*People v. McKee* (2010) 47 Cal.4th 1172, 1211, fn. 14; *Legg v. Department of Justice* (2022) 81 Cal.App.5th 504, 511.) Section 290 concerns sex offender registration for adult offenders, but it also requires a ward of the juvenile court to be registered pursuant to section 290.008. (§ 290, subd. (f).) Moreover, "the personal liberty interest of a minor is less comprehensive than that of an adult." (*In re Roger S.* (1977) 19 Cal.3d 921, 927.) "[E]ven where there is an invasion of protected freedoms 'the power of the state to control the conduct of children reaches beyond the scope of its authority over adults.' " (*Ginsberg v. State of New York* (1968) 390 U.S. 629, 638.) We therefore conclude the sex offender registration requirement in section 290.008 does not implicate a minor's fundamental right.

Also, "juveniles have not been recognized as a suspect class" (*In re J.M.* (2019) 35 Cal.App.5th 999, 1010), and minor does not contend otherwise. We thus review section 290.008 for rational basis.

Minor contends some courts have improperly evaluated section 290.008 as "terms of imprisonment" and on that premise held rational basis review applied. He urges us to reconsider those holdings because minors cannot be "convicted" or "imprisoned." We need not resolve this issue because we have separately concluded that section 290.008 does not involve a minor's loss of liberty.

III

*Equal Protection*

A.  *Analytical Framework for Equal Protection Claims*

"[W]hen plaintiffs challenge laws drawing distinctions between identifiable groups or classes of persons, on the basis that the distinctions drawn are inconsistent with equal protection, courts no longer need to ask at the threshold whether the two groups are similarly situated for purposes of the law in question. The only pertinent inquiry is whether the challenged difference in treatment is adequately justified under the applicable standard of review. The burden is on the party challenging the law to show that it is not." (*People v. Hardin, supra*, 15 Cal.5th at pp. 850-851.)

Minor contends section 290.008 lacks a rational basis to treat minors who commit the same offenses differently based solely on whether the offenses happened before or after juvenile justice realignment. Because minor challenges the distinctions drawn by section 290.008, we inquire whether a rational basis supports the difference in treatment. In doing so, we " 'may engage in " 'rational speculation' " as to the justifications for the legislative choice.' " (*Johnson v. Department of Justice* (2015) 60 Cal.4th 871, 881.) "To mount a successful rational basis challenge, a party must ' "[negate] every conceivable basis" ' that might support the disputed statutory disparity." (*Ibid.*)

6

*B.      Analysis*

Sex offender registration " 'is intended to promote the " 'state interest in controlling crime and preventing recidivism in sex offenders' " ' [citation] and serves 'an important and vital public purpose by compelling registration of many serious and violent sex offenders who require continued public surveillance' [citations]." (*Johnson v. Department of Justice, supra*, 60 Cal.4th at p. 877.)

"In 2018, the Legislature adopted Senate Bill No. 1494 (2017-2018 Reg. Sess.) which, amongst other things, modified sex offender registration for both juveniles and adults to create a tiered system." (*In re T.O., supra*, 84 Cal.App.5th at p. 268.)  This change suggests "the Legislature ha[s] recognized that some sex offenders, especially juveniles, may be rehabilitated." (*Ibid.*)  For minors in county facilities, "the Legislature appears to have determined that the risk of recidivism is low enough and the detrimental effects of sex offender registration high enough to justify no sex offender registration given their age and the amenability . . . to the types of treatment offered in local secure facilities." (*Ibid.*)  In other words, the Legislature could have determined that minors in county facilities have a lower risk of recidivism because they receive more effective treatment, and therefore need not register as sex offenders.  (See *In re Bernardino S.* (1992) 4 Cal.App.4th 613, 620-621 [the Legislature acknowledged "some tension between registration and the rehabilitative goals of the juvenile court law" and "consciously sought to require registration only of those 'violent or repeat offenders' whose dangerousness warranted the imposition of a penal measure otherwise reserved for convicted criminals"].)  The view that minors receive more effective treatment in county facilities could have supported the Legislature's ultimate decision to close DJJ.  (See Stats. 2020, ch. 337, § 1(b) ["To ensure that justice-involved youth are closer to their families and communities and receive age-appropriate treatment, it is necessary to close [DJJ] and move the jurisdiction of these youth to local county jurisdiction"].)  But at the same time, the Legislature could plausibly find that minors who were already in the

7

custody of DJJ have higher risk of recidivism due to lack of appropriate support and treatment and could conclude those minors must still register as sex offenders to serve the state's interest in controlling crime, preventing recidivism, and protecting the public. (See *Samples v. Brown* (2007) 146 Cal.App.4th 787, 807 [" ' " ' "Where there are 'plausible reasons' for [the classification] 'our inquiry is at an end.' " ' " ' "].) Therefore, a rational basis exists to support section 290.008's disparity of treatment between minors committed to DJJ and minors committed to county facilities. (See *In re Brian J.* (2007) 150 Cal.App.4th 97, 124 ["we give some deference to the Legislature in that we must presume the statute is valid 'unless its unconstitutionality clearly, positively, and unmistakably appears' "].) We find no equal protection violation.

DISPOSITION

The dispositional order is affirmed.


                                           /s/
                                         MESIWALA, J.


We concur:


 /s/
EARL, P. J.


 /s/
RENNER, J.