Filed 2/7/23  P. v. Chatman CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>LOUIS CLAYTON CHATMAN,<br><br>        Defendant and Appellant. | A165855<br><br>(Fresno County<br>Super. Ct. No.<br>F16907399) |

A jury convicted defendant Louis Clayton Chatman of three counts of lewd and lascivious acts on a child under the age of 14, and the trial court found true allegations defendant had suffered two prior serious felony convictions.  Before defendant could be sentenced, the trial court found him incompetent, suspended criminal proceedings, and committed him to a state hospital.  Less than a year later, the trial court determined defendant had been restored to competency and reinstated the proceedings.  The trial court subsequently sentenced him to 75 years to life.

On appeal, defendant contends (1) there was insufficient evidence to prove count 2; (2) the court, in connection with count 2, should have instructed the jury on battery as a lesser included offense of lewd or lascivious acts on a child under 14; (3) the court abused its discretion in denying his motion for new trial based on new evidence of his mental illness; (4) excluding him from a mental health diversion program violates his right

1

to equal protection; and (5) his 75-years-to-life sentence violates his right against cruel and unusual punishment.

We affirm.

## BACKGROUND[1]

In November 2018, the Fresno County District Attorney filed a first amended information alleging defendant committed three counts of lewd and lascivious acts upon a child under the age of 14 (Pen. Code, § 288, subd. (a))[2] and further alleging two prior serious felony convictions under the three strikes law (§§ 667, subds. (b)–(i), 1170.12, subd. (a)).

One of the victims, C., testified that when she was nine or 10 years old, she lived in an apartment with her sister H., her brothers, their mother, her uncle, and defendant, who was dating C.'s aunt. On one occasion C. was in her uncle's room playing his video game, when defendant entered and sat on the bed next to her. She was wearing her "sleeping gown." Defendant "laid [her] down in bed" and pushed her "shoulders back." He began touching her "private area" where she went "pee." As he did so, he stated "it's tight as fuck." C. did not know what he meant, and defendant used his hands and fingers and touched her "[u]p and down" under her underwear. It felt "[w]eird" and "[g]ross," so she got up and left the room and "went outside with my brothers and sisters."

Another time, when she was around the same age, she was in the "kitchen and [defendant] touched [her] butt" with his hand. He "[s]mack[ed]

---

[1] We provide only a summary of the case here and discuss additional facts in connection with our discussion of the issues raised on appeal.

[2] All further statutory references are to the Penal Code unless otherwise indicated.

[her] butt" and then "walked out the kitchen." She thought this was "weird" and that she had "to leave."

C. was "scared" and did not tell anyone about the incidents until one or two years later, when she was 11, and after the family had moved. She told her younger sister H. and her cousin. A year later, after C. heard defendant had commented that another child's "butt looked big," she told her mother what had happened and her mother took her to the police station.

When C. told her sister H. about the incidents, H. disclosed she was also a victim and defendant had touched her when she was eight. H. was at the refrigerator and defendant came up behind her and "put his hands in my pants" under her clothing. Defendant "touched [her] private part" where she went "pee." She did not tell her mother because she was "scared" and "didn't want [defendant] to hurt me." So C. took it upon herself to also tell their mother about H.

Mother testified she had gotten a call from her husband because of defendant "fondling with another—two kids." C., who was 13 at the time, commented "why are you worried about the neighbors" when defendant "was touching us." Mother called the police.

Fresno Officer Jennifer Federico performed forensic interviews with C. and H. In addition to the interviews, C. and H. were provided with anatomical drawings to identify where defendant touched them. C. circled "the vagina and butt" and also provided a written statement that was similar to her testimony at trial. H. circled "the vagina" and labeled it as "a cookie where you go pee."

San Bernardino County Sherriff Deputy William Fifita testified C. told him about two incidents where defendant touched her vagina and that he had touched "her buttock several times." She said that when defendant "put his

3

hands underneath her gown and underwear and fondled her vagina," "it hurted [*sic*] but she didn't bleed."[3]

Deputy Fifita testified H. told him of three incidents. One occurred when she "was laying down in the living room"—defendant "laid down by her feet and then started touching her leg first and then went underneath her clothing and touched her vagina." Another occurred when "she was getting something out of the refrigerator"—defendant "came up and was acting like he was getting something out of the refrigerator too and started—at the time he started fondling her vagina."[4]

The jury also heard from David Love, an expert in the "area of child sexual abuse accommodation syndrome."

Defendant did not testify or call any witnesses of his own.

The jury found him guilty as charged, and the trial court found true the allegations of two prior serious felonies and set the matter for sentencing. At the sentencing hearing, defense counsel made a section 1368 motion, declaring doubt as to defendant's competency. The court suspended criminal proceedings and appointed a doctor to evaluate defendant. The court subsequently found defendant incompetent on the basis of the evaluator's report and ordered him committed and delivered to a state hospital and authorized the facility to administer antipsychotic medication. Nine months later, the court found defendant had been restored to competency and reinstated sentencing proceedings.

---

[3] As to C., defendant was charged with the molestation occurring in the bedroom (count 1) and in the kitchen (count 2).

[4] As to H., defendant was charged with only the molestation occurring in the kitchen (count 3).

At the sentencing hearing, defense counsel made an oral motion for new trial, which the trial court denied. The court then sentenced defendant to a total term of 75 years to life.

## DISCUSSION

### *Substantial Evidence (Count 2)*

Defendant contends there is insufficient evidence to prove count 2 "based on C.'s testimony that [he] touched her on her buttocks."

"The proper test for determining a claim of insufficiency of evidence . . . is whether, on the entire record, a rational trier of fact could find the defendant guilty beyond a reasonable doubt. [Citations.] On appeal, we must view the evidence in the light most favorable to the People and must presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence." (*People v. Jones* (1990) 51 Cal.3d 294, 314.)

Section 288, subdivision (a) provides in relevant part: "[A] person who willfully and lewdly commits any lewd or lascivious act . . . upon or with the body, or any part or member thereof, of a child who is under the age of 14 years, with intent of arousing, appealing to, or gratifying the lust, passions, or sexual desires of that person or the child, is guilty of a felony. . . ." "The statute is violated if there is ' "any touching" of an underage child accomplished with the intent of arousing the sexual desires of either the perpetrator or the child.' (*People v. Martinez* (1995) 11 Cal.4th 434, 452 . . . (*Martinez*).) Thus, the offense described by section 288[, subdivision] (a) has two elements: ' "(a) the touching of an underage child's body (b) with a sexual intent." ' " (*People v. Villagran* (2016) 5 Cal.App.5th 880, 890 (*Villagran*).)

Section 288, subdivision (a) " 'requires "the *specific intent* of arousing, appealing to, or gratifying the lust of the child or the accused." [Citation.]'

5

[Citation.] 'Because intent for purposes of . . . section 288 can seldom be proven by direct evidence, it may be inferred from the circumstances.' [Citation.] In determining whether the defendant acted with the required specific intent, the jury therefore looks to all the circumstances, including the charged act. (*Martinez, supra,* 11 Cal.4th at p. 445.) 'Other relevant factors can include the defendant's extrajudicial statements [citation], other acts of lewd conduct admitted or charged in the case [citations], the relationship of the parties [citation], and any coercion, bribery, or deceit used to obtain the victim's cooperation or to avoid detection [citation].' " (*Villagran, supra,* 5 Cal.App.5th at p. 891.)

Defendant contends there is a "complete absence of evidence" showing he intended to " 'arous[e], appeal[] to, or gratify[] the lust, passions, or sexual desires of himself' " or C. because he "never did anything more than touch C.'s buttocks over her clothes." And more specifically, he "did not squeeze, massage, caress, fondle or engage in any touching which could be construed as a sexual touching."

Defendant cites no case stating the specific intent requirement for an act of lewd and lascivious conduct can be satisfied only when a defendant touches the victim underneath his or her clothing or the perpetrator "squeeze[s], massage[s], caress[es], [or] fondle[s]" the victim. Indeed, " '[*a*]*ny* touching of a child under the age of 14 violates this section, even if the touching is outwardly innocuous and inoffensive, if it is accompanied by the *intent* to arouse or gratify the sexual desires of either the perpetrator or the victim.' " (*People v. Shockley* (2013) 58 Cal.4th 400, 404 (*Shockley*); see *Martinez, supra,* 11 Cal.4th at p. 444 ["a lewd or lascivious act can occur through the victim's clothing and can involve 'any part' of the victim's body"].)

6

There is more than ample evidence supporting an inference that when defendant "grabbed" C. in the kitchen and "touch[ed]" her butt with his hand by "smack[ing]" it, he did so with sexual intent. To begin with, C. did not think this was normal or ok. Rather, it was "weird," and she had "to leave." She also confirmed on cross-examination, this was the second "incident where [defendant] grabbed your butt." At around this same time, defendant also sexually abused C. in her uncle's bedroom and at that time, had gone on to touch her vagina under her clothes.

In addition, defendant sexually accosted C.'s sister H. while she was in the kitchen and at the refrigerator, and during that incident "put his hands in [her] pants" under her clothing. Like C., H. was "scared." H. also said defendant molested her in the living room, again "fondling her vagina," and told Deputy Fifita he had further touched her a third time.

This evidence of defendant's pattern of conduct is more than sufficient to support an inference that defendant touched C.'s buttocks with the intent of " 'arousing, appealing to, or gratifying the lust of . . . the accused.' " (*Villagran, supra*, 5 Cal.App.5th at p. 891; see *Martinez, supra*, 11 Cal.4th at p. 445.)

### Instruction on Battery (Count 2)

Defendant also contends the jury "should have been instructed on battery as a lesser included offense of committing a lewd or lascivious act on [a] child under age 14 years in count 2." Defendant acknowledges that given the manner in which he was charged, *Shockley, supra*, 58 Cal.4th 400, holds otherwise. We, of course, are bound to follow that Supreme Court authority. (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455.)

"A trial court has a sua sponte duty to instruct the jury on any uncharged lesser offense that is necessarily included in a charged offense if

7

there is substantial evidence from which the jury could reasonably conclude that the defendant committed the lesser included offense but not the charged offense." (*People v. Lopez* (2020) 9 Cal.5th 254, 269; *People v. Duff* (2014) 58 Cal.4th 527, 561.) "To determine if an offense is lesser and necessarily included in another offense . . . , we apply either the elements test or the accusatory pleading test. 'Under the elements test, if the statutory elements of the greater offense include all of the statutory elements of the lesser offense, the latter is necessarily included in the former. Under the accusatory pleading test, if the facts actually alleged in the accusatory pleading include all the elements of the lesser offense, the latter is necessarily included in the former.' " (*Shockley, supra,* 58 Cal.4th at p. 404.)

As in *Shockley,* the accusatory pleading against defendant incorporated the statutory definition of the charged offenses without referring to the particular facts.[5] (*Shockley, supra,* 58 Cal.4th at p. 404.) Thus, we "must rely on the statutory elements to determine if there is a lesser included offense." (*People v. Robinson* (2016) 63 Cal.4th 200, 207; *Shockley*, at p. 404.)

Section 288, subdivision (a) provides, in relevant part, that any person who willfully "commits any lewd or lascivious act . . . upon or with the body, or any part or member thereof, of a child . . . with the intent of arousing, appealing to, or gratifying the lust, passions, or sexual desires of that person or the child, is guilty of a felony." " '*Any* touching of a child under the age of 14 violates this section, even if the touching is outwardly innocuous and

---

[5] All three counts used similar language and alleged defendant "willfully, unlawfully, and lewdly commit[ted] a lewd and lascivious act upon or with the body or certain parts or members thereof of [the victim], a child under the age of fourteen years, with the intent of arousing, appealing to, or gratifying the lust, passions, or sexual desires of said defendant(s) or the said child."

inoffensive, if it is accompanied by the *intent* to arouse or gratify the sexual desires of either the perpetrator or the victim.' " (*Shockley, supra*, 58 Cal.4th at p. 404.)

Section 242, in contrast, defines battery as "any willful and unlawful use of force or violence upon the person of another." " 'Any harmful or offensive touching constitutes an unlawful use of force or violence' under this statute. [Citations.] ' . . . "[T]he least touching" may constitute battery. In other words, force against the person is enough; it need not be violent or severe, it need not cause bodily harm or even pain, and it need not leave a mark.' " (*Shockley, supra*, 58 Cal.4th at p. 404.)

As did the defendant in *Shockley*, defendant questions whether a defendant can ever "engage in lewd conduct with a child younger than 14 years without also perpetrating the lesser offense of battery." (*Shockley, supra*, 58 Cal.4th at p. 405.) However, the high court declined to resolve that question, and instead, applying the statutory elements test, held battery is not a lesser included offense of lewd conduct upon a child under 14 years of age. (*Id.* at p. 404.)

In so holding, the court observed that agreeing with the defendant's contention "would mean this form of battery (where lewd conduct supplies the required harmful or offensive touching) is not a *lesser* and *included* offense of lewd conduct but is essentially the *identical* offense. If guilt of battery is predicated on guilt of lewd conduct—i.e., if a person is guilty of battery *because* that person committed lewd conduct—neither crime would have an element not also required of the other. Substantial evidence could never exist that an element of the lewd conduct offense is missing but that the defendant is guilty of a battery as a lesser included offense." (*Shockley, supra*, 58 Cal.4th at p. 405.) The court concluded, "when the elements of two

9

offenses are essentially identical, as when guilt of battery would be predicated on being guilty of lewd conduct, neither is a lesser and included offense of the other." (*Id*. at p. 406.)

While defendant acknowledges we are required to follow *Shockley,* he nevertheless cites to Justice Kennard's dissent in that case to support his assertion the trial court should have instructed on battery. Justice Kennard was of the view that the majority had "divided" battery "into two categories: (1) battery committed by harmful or offensive touching *with* lewd intent, and (2) battery committed by a harmful or offensive touching *without* lewd intent." (*Shockley, supra*, 58 Cal.4th at p. 408 (dis. opn. of Kennard, J.).) In criticizing this approach, Justice Kennard stated, in relevant part, that "the majority's two-category test does not adequately address the possibility of *conflicting* evidence on whether a defendant's conduct falls within one or the other category. For instance, what if the evidence at trial shows that a defendant committed an offensive touching of a child (a battery), but there is conflicting evidence on whether the touching was done with lewd intent? In this situation, the jury should not be deprived of its right to decide whether the defendant is guilty only of battery or of lewd conduct with a child as well." (*Id*. at p. 409 (dis. opn. Kennard, J.).)

While Justice Kennard's minority view may be of academic interest, the majority opinion is controlling, and the trial court had no obligation here to instruct on battery as a "lesser included" offense.

In any case, even if *Shockley* were not controlling, the evidence against defendant was so strong the trial court was under no duty to provide such a lesser-included instruction. A "court need instruct the jury on a lesser included offense only '[w]hen there is substantial evidence that an element of the charged offense is missing, but that the accused is guilty of' the lesser

10

offense." (*Shockley*, *supra*, 58 Cal.4th at p. 404.) Here, as discussed above, there is no "substantial evidence" that defendant did not commit lewd acts on C., i.e., that he did not act with any sexual motivation on either of the occasions charged in the information. In short, "there was no substantial evidence from which a reasonable jury could have concluded that defendant committed a lesser, but not a greater, offense." (*People v. Chenelle* (2016) 4 Cal.App.5th 1255, 1264.) Therefore, it is not reasonably probable the result would have been different even assuming a lesser-included battery instruction might have been appropriate. (*People v. Gonzalez* (2018) 5 Cal.5th 186, 195–196 [reviewing failure to instruct on lesser included offense under *People v. Watson* (1956) 46 Cal.2d 818]; *Chenelle,* at p. 1265 [same].)

### *Denial of New Trial Motion*

After the trial court found defendant had been restored to competency and reinstated criminal proceedings, it set the case for sentencing. At the sentencing hearing, defense counsel made an oral motion for new trial, and the following colloquy occurred:

Defense Counsel: "[A]fter the trial . . . defendant had mental health issues which sent him to the hospital. We say that is new evidence that wasn't discovered and it was material to the defendant. Even though I'm not a doctor, he appeared fine all throughout trial, was coherent before trial, helped me during the trial, we'd ask for a new trial based on that, and we'll submit."

"[The court]: Just so I'm clear, you don't have any personal basis for believing he was incompetent during the trial.

"[Defense counsel]: That's correct, Your Honor.

11

"[The court]: So based on that representation the Court is denying the request for new trial. Court will also note that during the trial the Court did not observe anything that led the Court to believe there was an issue of competence or anything else that would have required the trial to not proceed as it did."

Defense counsel made no further comment on the motion.

It is clear from the above colloquy that both the trial court and defense counsel were discussing the motion for new trial as it related to defendant's competency to stand trial.

Contrary to defense counsel's representations to the trial court, on appeal defendant maintains the court "appears to have totally missed how [his] severe mental illness impacts the case." Specifically, defendant now asserts the trial court "abused its discretion by failing to analyze and give proper weight to new evidence of [his] severe mental illness, which could have provide[d] an affirmative defense through a possible not guilty by reason of insanity plea and/or by using the mental illness to negate the specific intent element of section 288, subdivision (a)." He claims "[h]ad the jury known of [his] severe mental illness [at] least one but likely all of the jurors would have voted to acquit because [he] did not have requisite specific intent."

We review the trial court's denial of a motion for new trial for abuse of discretion. (*People v. Davis* (1995) 10 Cal.4th 463, 524; *People v. Watts* (2018) 22 Cal.App.5th 102, 115.) " ' "The determination of a motion for a new trial rests so completely within the court's discretion that its action will not be disturbed unless a manifest and unmistakable abuse of discretion clearly appears." ' " (*Davis*, at p. 524.)

Under section 1181, subdivision 8, the trial court may grant a motion for new trial, "[w]hen new evidence is discovered material to the defendant, and which he could not, with reasonable diligence, have discovered and produced at trial." "In ruling on a motion for a new trial based on newly discovered evidence, the trial court considers the following factors: ' "1. That the evidence, and not merely its materiality, be newly discovered; 2. That the evidence be not cumulative merely; 3. That it be such as to render a different result probable on a retrial of the cause; 4. That the party could not with reasonable diligence have discovered and produced it at the trial; and 5. That these facts be shown by the best evidence of which the case admits." ' " (*People v. Delgado* (1993) 5 Cal.4th 312, 328.)

Here, defendant has not satisfied the first and fourth elements, namely presenting new evidence that he could not, with reasonable diligence, have produced at trial. Indeed, he does not explain in his appellate briefing exactly what the supposed new evidence is. Rather, he simply vaguely asserts there was "new evidence of mental illness." He contends the "fact that the court did not observe mental [*sic*] during the trial did not mean that appellant did not suffer from mental [*sic*] until after the verdict[,] only that it was not discovered by defense counsel and the court until after the verdict— thus satisfying 'the newly discovered evidence' requirement."

To begin with, defendant's mental illness was not new. To the contrary, the section 1370 progress report showed defendant had a longstanding history of mental illness. For example, in that report, the evaluator noted defendant had reported "experiencing symptoms in his 20's,"[6] that the "severity of his symptoms ha[d] led to treatment in the community and hospitalizations" on at least three separate occasions, and that defendant

---

[6] Defendant was 47 years old at the time of the report.

had been "treated within the mental health system when he was incarcerated" previously. Even assuming this evidence was new to defense counsel, that does not mean it was "newly discovered" evidence within the meaning of section 1181, subdivision (8). To the contrary, " '[f]acts that are within the knowledge of defendant at the time of trial are not newly discovered even though he did not make them known to counsel until later.' " (*People v. Williams* (1962) 57 Cal.2d 263, 273.)

Further, even assuming this evidence of defendant's mental health history was not discoverable as of the time of trial and thus was "newly" discovered evidence for purposes of section 1181, subdivision (8), it would not have justified granting a new trial. Defendant was presumed competent for trial unless he proved the contrary by a preponderance of the evidence. (§ 1369, subd. (f); *People v. Lawley* (2002) 27 Cal.4th 102, 131.) At the hearing on the motion for new trial, however, defendant presented no evidence that, *at the time of trial*, he had been incompetent. To the contrary, defense counsel stated defendant "appeared fine all throughout trial, was coherent before trial, helped me during the trial," and confirmed, on questioning by the court, that he did not have "any personal basis for believing [defendant] was incompetent during the trial." The trial court stated that it, too, "did not observe anything that led [it] to believe there was an issue of competence or anything else that would have required the trial to not proceed as it did." Thus, while the section 1370 progress report may indicate defendant had a history of mental illness, it in no way indicated such illness affected his competency at the time of trial. In short, defendant presented *no* evidence that at the time the case was called for trial, he was incompetent to stand trial.

Nor is there any support for defendant's claim that a retrial wherein the evidence of his mental illness (again, even assuming it was "new" evidence for purposes of section 1181, subdivision (8)) was introduced, probably would have resulted in a different outcome "through a possible not guilty by reason of insanity plea and/or by using the mental illness to negate the specific intent element of section 288." Defendant did not identify any evidence supporting this claim at the hearing on the new trial motion, and he has pointed to no such evidence on appeal. Indeed, there was not a shred of evidence presented at trial that defendant was suffering any symptoms of a mental illness when he molested C. and H. Thus, defendant's assertion that "[h]ad the jury known of [his] severe mental illness [at] least one but likely all of the jurors would have voted to acquit because [he] did not have the requisite specific intent," is nothing more than bald speculation.

In sum, not only was the supposed new evidence of defendant's history of mental illness not "new" for purposes of a new trial motion, there also was "no abuse of discretion because defendant failed to show that a different result would be probable on retrial. The motion for new trial, including the issue of a probable different outcome on retrial, must, of course, be decided on the evidence actually before the court at that time, not on the basis of evidence that might be developed." (*People v. Beeler* (1995) 9 Cal.4th 953, 1004, abrogated on another ground as stated in *People v. Pearson* (2013) 56 Cal.4th 393, 462; *id*. at p. 1005 ["An affidavit that is 'so vague and general' supports the denial of a motion for new trial."].)

### Exclusion from Mental Health Diversion Program

"[S]ection 1001.35 specifies that the purpose of the mental health diversion law 'is to promote all of the following: [¶] (a) Increased diversion of individuals with mental disorders to mitigate the individual's entry and

15

reentry into the criminal justice system while protecting public safety. [¶] (b) Allowing local discretion and flexibility for counties in the development and implementation of diversion for individuals with mental disorders across a continuum of care settings. [¶] (c) Providing diversion that meets the unique mental health treatment and support needs of individuals with mental disorders.' " (*In re J.M.* (2019) 35 Cal.App.5th 999, 1004 (*J.M.*).)

To that end, section 1001.36 "authorizes trial courts to grant pretrial diversion to defendants suffering from qualifying mental disorders. [Citation.] It states '[o]n an accusatory pleading alleging the commission of a misdemeanor or felony offense, the court may . . . grant pretrial diversion to a defendant' if six 'minimum requirements . . . .' are met. (Pen. Code, § 1001.36, subds. (a)–[(c)].)" [7] (*Tellez, supra,* 56 Cal.App.5th at p. 443.) Expressly disqualified from mental health diversion are those charged with murder, voluntary manslaughter, using weapons of mass destruction, and certain sex offenses including lewd and lascivious acts on a child under 14 years of age. (§ 1001.36, subd. (d)(1)–(8).)

Defendant contends section 1001.36, subdivision (d)(4)'s exclusion of defendants convicted of lewd and lascivious acts on children under age 14

---

[7] A court may grant pretrial diversion to a defendant if the six minimum requirements for eligibility and suitability are met. The defendant is eligible for pretrial diversion if: (1) The defendant has been diagnosed with a mental disorder; and (2) The defendant's mental disorder was a significant factor in the commission of the charged offense. A defendant is suitable for pretrial diversion if: (3) A qualified mental health expert opines that defendant's symptoms would respond to treatment; (4) The defendant consents to diversion and waives the right to a speedy trial, subject to an exception for mentally incompetent defendants; (5) The defendant agrees to comply with treatment; and (6) The court is satisfied that the defendant will not pose an unreasonable risk of danger to public safety. (§ 1001.36, subds. (a)–(c); *Tellez v. Superior Court* (2020) 56 Cal.App.5th 439, 443, fn. 2 (*Tellez)*.)

violates the equal protection guarantees of the federal and California Constitutions.

"The United States and California Constitutions prohibit denial of equal protection of the laws. (U.S. Const., 14th Amend.; Cal. Const., art. I, § 7, subd. (a).) . . . The equal protection clause requires the state to treat all persons similarly situated alike or, conversely, to avoid all classifications that are 'arbitrary or irrational' and those that reflect ' "a bare . . . desire to harm a politically unpopular group." ' " (*Legg v. Department of Justice* (2022) 81 Cal.App.5th 504, 510 (*Legg*).)

" 'The first prerequisite to a meritorious claim under the equal protection clause is a showing that the state has adopted a classification that affects two or more *similarly situated* groups in an unequal manner.' (*In re Eric J.* (1979) 25 Cal.3d 522, 530. . . .)[8] We do not inquire 'whether persons are similarly situated for all purposes, but "whether they are similarly situated for purposes of the law challenged." ' (*Cooley v. Superior Court* (2002) 29 Cal.4th 228, 253. . . .) 'The use of the term "similarly situated" in this context refers only to the fact that " '[t]he Constitution does not require things which are different in fact or opinion to be treated in law as though they were the same.' . . ." [Citation.] There is always some difference between two groups. . . . Thus, an equal protection claim cannot be resolved by simply observing that the members of group A have distinguishing characteristic X while the members of group B lack this characteristic. The "similarly situated" prerequisite simply means that an equal protection claim cannot succeed, and does not require further analysis, unless there is some showing that the two groups are sufficiently similar with respect to the

---

8 Superseded on other grounds as stated in *In re Ernesto L.* (2022) 81 Cal.App.5th 31, 40–41.

17

purpose of the law in question that some level of scrutiny is required in order to determine whether the distinction is justified.' " (*Legg, supra,* 81 Cal.App.5th at p. 510.)

Defendant contends "[s]ex offenders excluded by section 1001.36 . . . , whose mental disorders were significant factors in the commission of their offenses, and who otherwise meet the requirements of . . . section 1001.36, are similarly situated for the purpose of mental health diversion because individually-targeted mental health services serve the goal of increasing public safety regardless of the crime committed. In other words, offenders who receive appropriate mental health services are naturally less likely to commit new offenses whether they are sex offenders or offenders who commit other crimes."

To begin with, statutory distinctions between those who commit non-serious and non-violent felonies and those who commit serious or violent felonies are common, and such distinctions do not run afoul of constitutional protections because such defendants are not similarly situated for equal protection purposes. " ' "Persons convicted of *different* crimes are not similarly situated for equal protection purposes." [Citations.] "It is one thing to hold . . . that persons convicted of the *same crime* cannot be treated differently. It is quite another to hold that persons convicted of *different crimes* must be treated equally." ' " (*People v. Barrera* (1993) 14 Cal.App.4th 1555, 1565.)

Thus, "[i]t is well within the prerogative of the Legislature," for example, "to determine that sex offenses against young children are deserving of longer sentences that sex offenses against adults or nonsex offenses." (*People v. Gomez* (2018) 30 Cal.App.5th 493, 502; see *People v. Tuck* (2012) 204 Cal.App.4th 724, 738 ["the mandatory registration

18

requirement that follows from a conviction under section 288, subdivision (a) gives rise to no denial of equal protection"]; *People v. Alvarado* (2010) 187 Cal.App.4th 72, 79 (*Alvarado*) [there is "no equal protection violation in imposing mandatory registration for defendant's attempted section 288(a) conviction"].) That a defendant committing sex crimes against children is *not* similarly situated to defendants committing other serious offenses forecloses defendant's equal protection claim here.

But even if a defendant committing any of the specified child sex crimes were similarly situated to other defendants not excluded from the diversion program, his equal protection claim would still fail.

"Where . . . two groups are similarly situated, the high court under federal law has prescribed different levels of scrutiny" (*Legg, supra,* 81 Cal.App.5th at p. 511), depending on whether the law targets a suspect class or touches on a fundamental interest. (*J.M., supra*, 35 Cal.App.5th at p. 1010.) " ' " '[I]n cases involving "suspect classifications" or touching on "fundamental interests" . . . the state bears the burden of establishing not only that it has a compelling interest which justifies the law but that distinctions drawn by the law are necessary to further its purpose.' " ' [Citation.] Where a disputed statutory disparity does not involve a suspect classification or the alleged infringement of a fundamental interest, equal protection of the law is denied only where there is no ' " 'rational relationship between the disparity of treatment and some legitimate governmental purpose.' " ' " (*Ibid*.)

Defendant claims strict scrutiny applies because a fundamental interest—his personal liberty—is at stake, citing *People v. Olivas* (1976) 17 Cal.3d 236 (*Olivas*). *Olivas* involved an equal protection challenge to a statute granting trial courts discretion to commit a misdemeanant between

19

the ages of 16 and 21 to the Youth Authority for a term potentially longer than the maximum jail term that could be imposed for the same offense if committed by a person over the age of 21 years. (*Olivas,* at p. 239.) The high court concluded the minor's "personal liberty" interest triggered a strict scrutiny analysis. (*Id.* at pp. 250–251.)

Subsequent cases have repeatedly refused to read *Olivas* for the broad proposition that all criminal statutes must be examined through the lens of strict scrutiny. In *People v. Wilkinson* (2004) 33 Cal.4th 821 (*Wilkinson*), for example, the Supreme Court said of its prior decision, "[t]he language in *Olivas* could be interpreted to require application of the strict scrutiny standard whenever one challenges upon equal protection grounds a penal statute or statutes that authorize different sentences for comparable crimes, because such statutes always implicate the right to 'personal liberty' of the affected individuals." (*Wilkinson*, at p. 837.) However, said the court, "*Olivas* properly has not been read so broadly." (*Ibid.*, citing *People v. Davis* (1979) 92 Cal.App.3d 250; *Davis,* at p. 258 ["We do not read *Olivas* as requiring the courts to subject all criminal classifications to strict scrutiny requiring the showing of a compelling state interest thereof."]; see *People v. Bell* (1996) 45 Cal.App.4th 1030, 1049 [a broad reading of *Olivas* would "intrude[] too heavily on the police power and the Legislature's prerogative to set criminal justice policy"]; *People v. Owens* (1997) 59 Cal.App.4th 798, 802 ["California courts have never accepted the general proposition that 'all criminal laws, because they may result in a defendant's incarceration, are perforce subject to strict judicial scrutiny.' "].) In accordance with the Supreme Court's more recent statements, and the prevailing view of the Courts of Appeal, we also apply the rational basis test.

In that regard, defendant maintains "[t]here is no rational basis to [exclude] sex offenders from mental health treatment. Particularly, in [the instant] case, where it was undisputed in the section 1368 proceedings that [defendant] required specialized mental health treatment and involuntary medication." He further asserts, "there is no rational basis to permit defendants charged with other serious crimes to avoid a felony finding against them or to obtain dismissal by participating in mental health diversion, but to disallow the same benefits for sex offenders."

We have no trouble concluding the Legislature could rationally exclude defendants who commit serious child sex crimes from a pretrial diversion program and require such defendants to go to trial and, if convicted, serve a prison term that comports with the term the Legislature has determined is appropriate punishment for a crime of this nature against a child. (See *People v. McKee* (2012) 207 Cal.App.4th 1325, 1343–1344 [Sexually Violent Predators Act does not violate equal protection rights in part because "there is substantial evidence to support a reasonable perception by the electorate, as a legislative body, that the harm caused by child sexual abuse and adult sexual assault is, in general, a greater harm than the harm caused by other offenses and is therefore deserving of more protection"]; *Alvarado, supra*, 187 Cal.App.4th at p. 79 [mandatory registration for a section 288(a) offense is rationally related to legitimate state purpose because that "offense is limited to victims under the age of 14 years, who tend to be more vulnerable to being preyed upon by sexual predators"]; *People v. Singh* (2011) 198 Cal.App.4th 364, 371 [same].)

### Cruel and Unusual Punishment

Because the trial court found true allegations that defendant had committed two prior serious felonies, he was sentenced as a "third striker,"

21

and the court was required to sentence him to 25 years to life on each of the lewd and lascivious act counts. (§ 667, subds. (b), (e).)[9] At the sentencing hearing, the court stated, "These are mandatory sentences, however[,] even if there was discretion, the Court does not believe this would be an appropriate case to do anything other than impose indeterminate terms described by law." Accordingly, pursuant to section 667, subdivision (e)(2), the court sentenced defendant to a total term of 75 years to life (consisting of 25 years to life on each count to be served consecutively).

Defendant contends that at 49 years of age, the mandatory statutory 75-years-to-life sentence "is effectively a sentence of life without the possibility of parole" and constitutes "cruel and unusual punishment" under the federal and California Constitutions.

"[I]n California, a punishment may violate article I, section 6, of the California Constitution if, although not cruel or unusual in its method, it is so disproportionate to the crime for which it is inflicted that it shocks the

---

[9] Section 667, subdivision (b) provides, "It is in the intent of the Legislature in enacting subdivisions (b) to (i), inclusive, to ensure longer prison sentences and greater punishment for those who commit a felony and have been previously convicted of one or more serious or violent felony offenses."

Section 667, subdivision (e)(2) provides, in relevant part, "if a defendant has two or more prior serious or violent felony convictions . . . that have been pled and proved, the term for the current felony conviction shall be an indeterminate term of life imprisonment with a minimum term of the indeterminate sentence calculated as the greatest of: [¶] . . . [¶] (ii) Imprisonment in the state prison for 25 years. [¶] . . . [¶] (B) The indeterminate term . . . shall be consecutive to any other term of imprisonment for which a consecutive term may be imposed by law. Any other term imposed subsequent to [the] indeterminate term . . . shall not be merged therein but shall commence at the time the person would otherwise have been released from prison." (§ 667, subd. (e)(2)(A)–(B).)

22

conscience and offends fundamental notions of human dignity." (*In re Lynch* (1972) 8 Cal.3d 410, 424 (*Lynch*), superseded by statute on another ground as stated in *People v. West* (1999) 70 Cal.App.4th 248, 256.)

"Whether a particular punishment is disproportionate to the offense is, of course, a question of degree. The choice of fitting and proper penalties is not an exact science, but a legislative skill involving an appraisal of the evils to be corrected . . . ; in appropriate cases, some leeway for experimentation may also be permissible. The judiciary, accordingly, should not interfere in this process unless a statute prescribes a penalty 'out of all proportion to the offense' [citations], i.e., so severe in relation to the crime as to violate the prohibition against cruel or unusual punishment." (*Lynch, supra,* 8 Cal.3d at pp. 423–424.)

Our Supreme Court has devised a three-part test for assessing whether punishment is cruel or unusual. (*Lynch, supra,* 8 Cal.3d at pp. 425–427.) First, courts should consider "the nature of the offense and/or the offender, with particular regard to the degree of danger both present to society." (*Id.* at p. 425.) Second, courts should "compare the challenged penalty with the punishments prescribed in the same jurisdiction for different offenses which, by the same test, must be deemed more serious." (*Id.* at p. 426, italics omitted.) Third, courts should compare "the challenged penalty with the punishment prescribed for the same offense in other jurisdictions having an identical or similar constitutional provision." (*Id.* at p. 427, italics omitted.)

The defendant bears the burden of establishing that the punishment prescribed for his offense is unconstitutional (*People v. King* (1993) 16 Cal.App.4th 567, 572), although he need not establish disproportionality in all three respects. (*People v. Dillon* (1983) 34 Cal.3d 441, 487, fn. 38,

superseded by statute as stated in *People v. Sifuentes* (2022) 83 Cal.App.5th 217, 228.)

Defendant appears to focus on the first *Lynch* factor. He asserts that "[w]hile these crimes are appalling and certainly psychologically emotionally damaging to the children, neither girl was physically injured." Additionally, while "[s]ex crimes against children certainly require strong punishment . . . condemning a mentally ill man with no prior sex crime history to the remainder of his life in prison is a vindictive, excessive and unconstitutional punishment." Finally, he notes that C. ended her trial testimony with a hope that defendant " 'gets help,' " asserting her "hope was not realized with [his] draconian sentence."

We first observe that the principal case on which defendant relied in his briefing, *People v. Cadena* (2019) 39 Cal.App.5th 176, in which the Court of Appeal ruled a "one strike" 30-year to life sentence for section 288, subdivision (a) convictions was not properly imposed under the statutory scheme and was also constitutionally excessive, was ordered depublished by our Supreme Court and is therefore no longer citable authority. (See Cal. Rules of Court, rule 8.1115(a).) The appellate court ruled in that case that even "one-strike" sentencing was not permissible despite multiple victims and that the sentence was excessive because the offensive touching was exceedingly brief and was only on the victims' clothes. The two victims also were not "young" children (i.e., 10 years or younger). The depublication order, of course, suggests the court's reasoning was in some respect unsound. In any case, defendant was sentenced as a "third striker," and as we have recounted, the facts here were far more aggravated.

Defendant's sentence became an admittedly long one because the "three strikes" law applied and was a consequence of his being a recidivist felon.

"Recidivism in the commission of multiple felonies poses a manifest danger to society justifying the imposition of longer sentences for subsequent offense." (*People v. Kinsey* (1995) 40 Cal.App.4th 1621, 1630.) "When a person has proven himself immune to the ordinary modes of punishment, then it becomes the duty of government to seek some other method to curb his criminal propensities that he might not continue to further inflict himself upon law-abiding members of society. This, we think, may be done even to the extent of depriving him permanently of his liberty." (*People v. Cooper* (1996) 43 Cal.App.4th 815, 827-828.)

We therefore conclude defendant's sentence is not constitutionally excessive. He took advantage of his position of trust to sexually assault two young girls with whom he lived, on multiple occasions. Two of the counts of which he was convicted involved direct fondling of the girls' vaginal areas. And while he may have had no prior history of sex crimes, he did have a lengthy criminal history spanning over three decades, which included two prior serious felony convictions. The probation report listed no factors in mitigation and stated that "[f]or more than 30 years, the defendant has steadily demonstrated escalating criminal behavior, habitual non-compliance while on supervision, and a constant rate of re-offense." As for his history of mental illness, there was no evidence whatsoever it played any role in his crimes.

Finally, as for C.'s comment that she hoped defendant "gets help," she also stated she did not want what happened to her "to happen to more people." And while she has tried "to forget it," "sometimes [she] still think[s] about" defendant's violative criminal acts. She has "never got[ten] closure," and she has "never got[ten] a sorry for what he did to me."

In sum, defendant has failed to meet his burden of establishing that his sentence "is so disproportionate to the crime[s] for which it is inflicted that it shocks the conscience and offends fundamental notions of human dignity." (*In re Lynch, supra,* 8 Cal.3d at p. 425;[10] see *People v. Ayon* (1996) 46 Cal.App.4th 385, 396-401 [rejecting cruel and unusual punishment claim and upholding sentence of 240 years to life], disapproved on another ground as stated in *People v. Deloza* (1998) 18 Cal.4th 585, 600, fn. 10; *People v. Poslof* (2005) 126 Cal.App.4th 92, 95–96 [three strikes life term for knowingly failing to register as sex offender not unconstitutional].)

## DISPOSITION

The judgment is AFFIRMED.

---

[10] " 'Although articulated slightly differently, both [the federal and state cruel and unusual punishment] standards prohibit punishment that is "grossly disproportionate" to the crime or the individual culpability of the defendant.' " (*People v. Baker* (2018) 20 Cal.App.5th 711, 733.) Accordingly, for the same reasons we have discussed in connection with *Lynch*, we also reject defendant's federal cruel and unusual punishment challenge. (See *Baker,* at p. 733.)

_____
Banke, J.

We concur:


_____
Margulies, Acting P.J.


_____
Devine, J.*


*Judge of the Contra Costa Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.


A165855, People v. Chatman