Filed 2/19/25

<u>CERTIFIED</u> <u>FOR</u> <u>PARTIAL</u> <u>PUBLICATION</u>*

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| R.D.,<br><br>        Petitioner,<br><br>   v.<br><br>THE SUPERIOR COURT OF SACRAMENTO COUNTY,<br><br>        Respondent;<br><br>THE PEOPLE,<br><br>        Real Party in Interest. | C100422<br><br>(Super. Ct. No. JV140057) |

---

* Pursuant to California Rules of Court, rules 8.1105 and 8.1110, this opinion is certified for publication with the exception of the Discussion part I.

1

ORIGINAL PROCEEDING in mandate.  Petition Denied.

Amanda Benson, Public Defender, Dena Joy Stone, Assistant Public Defender for Petitioner.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Senior Assistant Attorney General, Chung Mi Choi, Deputy Attorney General, Eric L. Christoffersen, Supervising Deputy Attorney General for Real Party in Interest.

The California Racial Justice Act of 2020 (RJA) (Assem. Bill No. 2542 (2019-2020) Reg. Sess.) (Assem. Bill No. 2542) was enacted with the intent to reduce or eliminate criminal convictions and juvenile adjudications sought or obtained, or commitments imposed, based on race, ethnicity, or national origin.  The RJA created a procedure for juveniles to show that a participant in juvenile justice proceedings has exhibited bias.  Generally, the statute provides that if the court finds that an RJA violation occurred, it "*shall* impose a remedy *specific to the violation*" found in lists enumerated in the statute.  (Pen. Code, § 745, subd. (e), italics added.)[1]  This case concerns a prejudgment violation of the RJA.  In the event of such prejudgment violation, the court "*may* impose" certain listed remedies.  (*Id.*, subd. (e)(1), italics added.)

Here, a juvenile wardship petition was filed against minor/petitioner R.D.  The minor orally requested release on electronic monitoring during a settlement conference.  In denying the motion, a visiting retired judge made several comments that we describe in detail, *post*.  Citing those comments, the minor filed a motion to dismiss the pending petition, alleging a violation of the RJA.

A week after the motion was denied, a different juvenile court judge granted the minor's renewed motion for release on electronic monitoring.  In a subsequent hearing,

[1] Further undesignated statutory references are to the Penal Code.

2

that same judge found the comments at issue violated the RJA. However, the judge concluded that dismissal was not a remedy specifically authorized by the RJA and also declined to reduce the charge or impose any of the listed potential remedies, finding that doing so would not be in the interest of justice. The judge invited the minor to move for dismissal or reduction of the charges under a different statutory scheme, but the minor did not do so.

Instead, the minor filed a petition for writ of mandate in this court, contending the RJA both authorized dismissal as a remedy, and *required* the juvenile court to impose a remedy. A panel of this court summarily denied the minor's petition. Our Supreme Court granted the minor's petition for review and directed that we vacate the order denying the petition and issue an order to show cause; we did so.

In the published portion of this opinion, we conclude that although the RJA does not *preclude* the court from dismissing charges based on another law, to remedy an RJA violation, the statute does not specifically *include* dismissal as a remedy for an RJA violation. Thus, the juvenile court did not err when it declined to dismiss the charge against the minor based *solely* on the RJA. Nor did the court abuse its discretion in declining to reduce the charge.

In the unpublished portion of our opinion, we reject the Attorney General's argument that the minor's petition should be denied because he has an adequate remedy at law.

## BACKGROUND

*The Racial Justice Act*

The RJA provides that "[t]he state shall not seek or obtain a criminal conviction or seek, obtain, or impose a sentence on the basis of race, ethnicity, or national origin." (§ 745, subd. (a).) The RJA expressly applies to "adjudications and dispositions in the juvenile delinquency system." (*Id.*, subd. (f).)

3

In passing the RJA, the Legislature expressed its intent "to eliminate racial bias from California's criminal justice system," noting that "racism in any form or amount, at any stage of a criminal trial, is intolerable, inimical to a fair criminal justice system, is a miscarriage of justice under Article VI of the California Constitution, and violates the laws and Constitution of the State of California." (Assem. Bill No. 2542, § 2, subd. (i).)

The Legislature further expressed that "[i]t is the intent of the Legislature to ensure that race plays no role at all in seeking or obtaining convictions or in sentencing." (Assem. Bill No. 2542, § 2, subd. (i).) It recognized that "[i]mplicit bias, although often unintentional and unconscious, may inject racism and unfairness into proceedings similar to intentional bias," and specified that its intent was "not to punish this type of bias, but rather to remedy the harm to the defendant's case and to the integrity of the judicial system." (*Ibid.*) Its goal was "to provide remedies that will eliminate racially discriminatory practices in the criminal justice system, in addition to intentional discrimination." (*Id.*, subd. (j).)

The RJA specifies four categories of conduct, any one of which, if proven by a preponderance of the evidence, establishes a violation. (§ 745, subd. (a)(1)-(4).) Subdivision (a)(1) provides that a violation occurs when "the judge, an attorney in the case, a law enforcement officer involved in the case, an expert witness, or juror exhibited bias or animus towards the defendant because of the defendant's race, ethnicity, or national origin." A violation occurs under section 745, subdivision (a)(2) where, "[d]uring the defendant's trial, in court and during the proceedings, the judge, an attorney in the case, a law enforcement officer involved in the case, an expert witness, or juror, used racially discriminatory language about the defendant's race, ethnicity, or national origin, or otherwise exhibited bias or animus towards the defendant because of the

4

defendant's race, ethnicity, or national origin, whether or not purposeful."[2] Under subdivision (a)(3), it is a violation if a defendant was charged or convicted of a more serious offense than defendants of other races, ethnicities, or national origins who engaged in similar conduct and are similarly situated, and the evidence establishes that the prosecution in the county where the conviction was sought or obtained more frequently sought or obtained convictions for more serious offenses against people who shared the defendant's race, ethnicity, or national origin. Similarly, under subdivision (a)(4) of section 745, it is a violation if a more severe sentence was imposed on the defendant than was imposed on similarly situated individuals convicted of the same offense, and more severe sentences were more frequently imposed for the same offense on defendants of one race, ethnicity, or national origin than on defendants of other races, ethnicities, or national origins in the county where the sentence was imposed.

A minor may file a motion alleging a violation of section 745, subdivision (a), after which the juvenile court must determine whether the minor has made "a prima facie showing of a violation." (*Id.*, subd. (c).) Upon determining that the minor has made the requisite prima facie showing, the court must hold a hearing, at which the minor bears the burden of proving a violation of subdivision (a) by a preponderance of the evidence. (*Id.*, subd. (c)(1) & (2).)

Section 745, subdivision (e) and its enumerated subparts address remedies for the violations described in subdivision (a). If the juvenile court finds that a violation of

---

[2] The statute defines "racially discriminatory language" as "language that, to an objective observer, explicitly or implicitly appeals to racial bias, including, but not limited to, racially charged or racially coded language, language that compares the defendant to an animal, or language that references the defendant's physical appearance, culture, ethnicity, or national origin. Evidence that particular words or images are used exclusively or disproportionately in cases where the defendant is of a specific race, ethnicity, or national origin is relevant to determining whether language is discriminatory." (§ 745, subd. (h)(4).)

subdivision (a) has occurred, "the court shall impose a remedy specific to the violation found from the following list." (§ 745, subd. (e).) This case, because it is prior to entry of judgment, implicates subdivision (e)(1), which provides as follows: "Before a judgment has been entered, the court may impose any of the following remedies: [¶] (A) Declare a mistrial, if requested by the defendant. [¶] (B) Discharge the jury panel and empanel a new jury. [¶] (C) If the court determines that it would be in the interest of justice, dismiss enhancements, special circumstances, or special allegations, or reduce one or more charges." (*Id.*, subd. (e)(1).) After a judgment has been entered, if the court finds that either the conviction and/or the sentence was sought or obtained in violation of subdivision (a), the court must vacate the conviction and/or sentence and either order new proceedings, in the case of an invalid conviction, or impose a new sentence, in the case of an invalid sentence. (*Id.*, subd. (e)(2)(A) & (B).) Section 745, subdivision (e)(3) provides that where the court finds a violation of subdivision (a), the defendant shall not be eligible for the death penalty. Finally, subdivision (e)(4) provides: "The remedies available under this section do not foreclose any other remedies available under the United States Constitution, the California Constitution, or any other law."

*Juvenile Wardship Petition*

On June 15, 2023, the People filed a juvenile wardship petition pursuant to Welfare and Institutions Code section 602, subdivision (a), alleging that the minor carried a loaded firearm in public (Pen. Code, § 25850, subd. (a); count one); carried a concealed firearm in a vehicle (*id.*, § 25400, subd. (a)(1); count two); resisted or obstructed law enforcement (*id.*, § 148, subd. (a)(1); counts three and four); and gave a false name to law enforcement (*id.*, § 148.9, subd. (a); count five). The minor was ordered detained on the petition.

6

*Minor's Motions for Release*

On June 30, the minor orally moved for release on electronic monitoring. Visiting Judge Renard Shepard denied the motion. Judge Joginder Dhillon denied a similar oral motion on July 13.

On July 26, at a settlement conference, the minor again orally moved for release on electronic monitoring. The prosecutor objected to release, and Judge Shepard denied the motion. Judge Shepard commented: "This is a serious criminal we're talking about. This is a 17 year old that has got a .40 caliber Glock gun on him. This is a guy that kicked the police officer in the face. This is a guy that would not even get out of the car because he didn't want the cops probably to know he's got the gun on him. They had to extradite him to get him out. Force him out of the car, and then he's resisting all the way. I mean, a .40 caliber Glock handgun in his waistband. He . . . was walked to the patrol vehicle, continued to physically pull away from officers, had to be placed in maximum restraints to prevent further harm to officers. The firearm was loaded with live ammunition. This is a 17 year old boy who is supposed to be in high school, supposed to be going to summer school, supposed to have a summer job or something. This is a serious gang banger we are dealing with. G-Mobb. [¶] . . . I don't know what APE gang is. Another gang he's involved with. Sacramento street gang G-Mobb . . . . We have got the gangbanger here. There's youths out there carrying these guns. There's terror in the streets with teenagers like him . . . . He's a serious gang banger. He's got it in his blood, in his culture. He can't get it out of his system . . . . He is going to wind up downtown in county jail, if not prison . . . . He's out gangbanging at night."

*RJA Motion*

On July 31, the minor filed a motion to dismiss under the RJA. The minor argued that Judge Shepard's repeated references to him as a " 'gang banger' " were imbued with racial bias or animus, and the judge's comments that gang involvement was " 'in his blood' " and " 'in his culture' " were improper references to his race and ethnicity. (See

7

§ 745, subd. (a).)  He further argued that he had made a prima facie showing that Judge Shepard had exhibited racial bias or animus, requiring the court to hold a hearing.  (See *id.*, subds. (b) & (c).)

On August 1, over the People's objection, Judge Dhillon (hereafter the juvenile court or court) granted the minor's request for release on electronic monitoring.

On August 30, the juvenile court found that the minor had made a prima facie showing of a violation of section 745.  The minor requested that the court reduce his custody status to home supervision; on September 18, the court granted the request and released the minor on home supervision.

On October 27, at the hearing on the minor's motion to dismiss, the juvenile court found Judge Shepard had violated section 745, subdivision (a)(2).  The court "[found] that the language used, specifically, the language [the minor] is a serious gangbanger, repeated references to that term, he's got it in his blood, in his culture, he can't get it out of his system, those references were the kinds of language, and reflected the potential bias or animus that the Legislature intended to address by enacting this law."  The court then "straight released" the minor, with the stipulation of the People.  The court asked the parties to address the issue of remedies and set a date for a hearing on that matter.

In a brief regarding remedies under section 745, subdivision (e), the minor argued that dismissal was warranted because although subdivision (e)(1) (specifying the remedies for an RJA violation occurring before entry of judgment) did not include dismissal as a remedy, dismissal was warranted and available under subdivision (e)(4), which authorized the court to impose "any other remedies available under the United States Constitution, the California Constitution, or any other law."  We discuss these subdivisions in more detail, *post*.

At the hearing on remedies, the prosecutor observed that although the juvenile court had the power to dismiss the petition under various statutes, dismissal was not a remedy *specifically* provided for in the RJA.  The prosecutor noted that the violation was

8

committed by a visiting judge in the context of a ruling that was effectively reversed on the minor's next court date, and because Judge Shepard would not be presiding over the remainder of the proceedings, "the situation has remedied itself." The prosecutor added that dismissal would not be in the interest of justice based on the severity of the charged offenses, and because the minor continued to pose a danger to himself and others.

In response to the minor's argument that dismissal was authorized by subdivision (e)(4) of section 745, the juvenile court noted that while the initial version of Assembly Bill No. 2542 included dismissal as a remedy for a prejudgment RJA violation, the final version did not. The court concluded that subdivision (e)(4) of section 745[3] was properly interpreted to mean a finding of an RJA violation does not *deprive* the court of the authority to grant dismissal under other statutes, but remedies authorized under the federal or state constitutions or statutes are not incorporated as remedies available for imposition under section 745. Accordingly, the court determined that it did not have the authority to dismiss the charges *under section 745*. The court observed that it had the authority to reduce one or more charges, but that relief was not sought by the minor's motion.

The juvenile court then declined to rule on the minor's oral requests for dismissal under Welfare and Institutions Code section 782,[4] or alternatively, to reduce the felony

---

[3] The transcript of the hearing reflects that the court stated "[§] 745(e)(1)," but it appears the court misspoke.

[4] Welfare and Institutions Code section 782, subdivision (a)(1) provides in relevant part: "A judge of the juvenile court in which a petition was filed . . . may dismiss the petition, or may set aside the findings and dismiss the petition, if the court finds that the interests of justice and the welfare of the person who is the subject of the petition require that dismissal, or if it finds that they are not in need of treatment or rehabilitation. The court has jurisdiction to order dismissal or setting aside of the findings and dismissal regardless of whether the person who is the subject of the petition is, at the time of the order, a ward or dependent child of the court."

charges to misdemeanors under Welfare and Institutions Code section 700.3, preferring to address such motions when properly noticed and calendared.

The juvenile court also refused the minor's oral request to reduce the charges under section 745, subdivision (e)(1)(C), determining it would not be in the interest of justice to reduce the charges and it would not be a remedy specific to the RJA violation.

*Petition for Writ of Mandate*

On February 9, 2024, the minor filed the instant petition for writ of mandate. On April 25, following preliminary briefing by the Attorney General and the minor, this court summarily denied relief. On June 12, our Supreme Court granted review and transferred the matter to this court with directions to vacate the order denying relief and issue an order to show cause why the relief in the petition should not be granted. On June 17, we vacated our previous order and issued an order to show cause, directing the Attorney General to file a written return.

Following additional briefing from the parties, the case was fully briefed in August 2024, and was assigned to the current panel at the end of that month.

## DISCUSSION

### I

*No Adequate Remedy on Appeal*

The Attorney General first argues that we should deny the minor's petition because he has an adequate remedy on appeal. We disagree.

Generally, a writ of mandate will lie when "(1) there is no plain, speedy and adequate alternative remedy, (2) the public official has a legal and usually ministerial duty to perform and (3) the petitioner has a clear and beneficial right to performance." (*Menefield v. Foreman* (2014) 231 Cal.App.4th 211, 216-217; see Code Civ. Proc., § 1086 ["The writ must be issued in all cases where there is not a plain, speedy, and adequate remedy, in the ordinary course of law"]; *Villery v. Department of Corrections &*

10

*Rehabilitation* (2016) 246 Cal.App.4th 407, 414 [existing cases typically address whether an alternative remedy is " 'plain, speedy, and adequate' "].)

"The Supreme Court has identified general criteria for determining the propriety of writ review. 'These criteria include circumstances in which "the party seeking the writ lacks an adequate means, such as a direct appeal, by which to attain relief" or "the petitioner will suffer harm or prejudice in a manner that cannot be corrected on appeal." ' " (*Baeza v. Superior Court* (2011) 201 Cal.App.4th 1214, 1221.) Additional factors include, "without being limited to, the expense of proceeding with trial [citation], prejudice resulting from delay [citation], inordinate pretrial expenses [citation], the possibility the asserted error might not infect the trial [citation], and the possibility the asserted error might be corrected in a lower tribunal before or during trial [citation]. A remedy is not inadequate merely because more time would be consumed by pursuing it through the ordinary course of law than would be required in the use of an extraordinary writ." (*Hogya v. Superior Court* (1977) 75 Cal.App.3d 122, 128.)

" " ' "The question whether there is a "plain, speedy and adequate remedy in the ordinary course of law," within the meaning of the statute, is one of fact, depending upon the circumstances of each particular case, and the determination of it is a matter largely within the sound discretion of the court.' " ' " (*Flores v. Department of Corrections & Rehabilitation* (2014) 224 Cal.App.4th 199, 206.)

The Attorney General argues that because the minor was authorized to raise a claim alleging a violation of the RJA on direct appeal (§ 745, subd. (b) [defendant may raise a claim alleging a violation of the RJA on direct appeal from the conviction or sentence]), he had a presumptively adequate legal remedy that he failed to rebut. But here the minor is not merely *claiming* that an RJA violation occurred; rather, the juvenile court has already determined that such a violation occurred, and the parties dispute the proper remedy. Should the minor prevail on the claims raised in his petition, the juvenile wardship petition might be dismissed. Requiring him to undergo a jurisdictional and

11

dispositional hearing, and possible commitment resulting in a loss of liberty, before having had the opportunity to raise his claim on direct appeal, would subject him to prejudice. Accordingly, we conclude review by extraordinary writ proceeding is appropriate.

## II

### *The Racial Justice Act Violation*

A. *Dismissal as a Remedy Authorized by Section 745 Claim*

The minor challenges the juvenile court's conclusion that the RJA does not specifically include dismissal as a remedy for prejudgment violations of the statute. As we will explain, we agree with the juvenile court's interpretation of the RJA.

Our fundamental task in construing a statute is to ascertain the Legislature's intent so as to effectuate the purpose of the law. (*Hassan v. Mercy American River Hospital* (2003) 31 Cal.4th 709, 715.) The first step in the interpretative process is to examine the words of the statute, because "statutory language is generally the most reliable indicator of legislative intent." (*Ibid.*) We give the words of a statute their ordinary and usual meaning and construe them in the context of the statute as a whole. (*Ibid.*) "Courts should give meaning to every word of a statute if possible, and should avoid a construction making any word surplusage." (*Arnett v. Dal Cielo* (1996) 14 Cal.4th 4, 22.)

As we set forth *ante*, section 745, subdivision (e) provides in relevant part: "Notwithstanding any other law, . . . if the court finds . . . a violation of subdivision (a), the court shall impose a remedy specific to the violation found from the following list." Subparts (1) through (4) follow. Subdivision (e)(1) expressly applies to prejudgment violations, and provides that the court "may impose" any of the following remedies: "(A) Declare a mistrial, if requested by the defendant[;] [¶] (B) Discharge the jury panel and empanel a new jury[;] [¶] (C) If the court determines that it would be in the interest of justice, dismiss enhancements, special circumstances, or special allegations, or reduce

12

one or more charges." Section 745, subdivision (e)(2) expressly provides available remedies in the context of a postjudgment RJA violation. Pursuant to subdivision (e)(3), a defendant shall not be eligible for the death penalty if the court finds an RJA violation. Finally, subdivision (e)(4) provides: "The remedies available under this section do not foreclose any other remedies available under the United States Constitution, the California Constitution, or any other law."

The minor argues that because subdivision (e) of section 745 requires that the remedy for an RJA violation must be "found from the following list," the Legislature intended for subdivisions (e)(1) through (e)(4) to constitute remedies the court may impose in the event a violation occurs. Further, the minor contends subdivision (e)(4) is properly interpreted as *incorporating into the RJA* all remedies available under the law. As we will explain, we disagree with that interpretation and instead conclude that section 745, subdivision (e)(4) is properly construed to clarify that the minor is *not precluded* from seeking relief under other statutory or constitutional provisions despite the limited lists of remedies specifically set forth in the RJA.[5]

Initially, the language of section 745, subdivision (e)(4) is most naturally read to clarify that the remedies available under the RJA do not preclude seeking relief under "the United States Constitution, the California Constitution, or any other law." Indeed, subdivision (e)(4) distinguishes between "[t]he remedies available under this section" and "any other remedies available" under law and provides that the remedies available under the RJA *do not foreclose* such other remedies. "[F]oreclose" is defined in part as "to shut out," or to "debar, prevent, hinder, preclude." (Merriam-Webster Unabridged Dict.

---

[5] We do not conclude that subdivision (e)(4) of section 745 "is not part of the list," as the dissent posits. (Dis. opn., *post*, at p. 3.) Instead, as we explain *post*, we conclude that subdivisions (e)(1) and (e)(2) set forth enumerated lists of prejudgment and postjudgment remedies, subdivision (e)(3) prohibits death sentences, and subdivision (e)(4) clarifies the continued availability of other constitutional and statutory remedies for RJA violations.

13

Online (2025) <http://unabridged.merriam-webster.com/unabridged/foreclose> [as of Feb. 13, 2025], archived at <https://perma.cc/6Q2G-VAPJ>.)  In other words, subdivision (e)(4) of section 745 provides that the remedies available under the RJA do not prevent or preclude the minor from seeking other remedies available under any other law, subject to the showings required by those statutes or constitutional provisions.  But while such other remedies are not *precluded* by subdivision (e)(4), the text of subdivision (e)(4) does not indicate that all remedies provided for by law have been specifically incorporated as remedies under the RJA.

The minor argues that because section 745, subdivision (e) requires the imposition of a remedy "from the following list," each of subdivisions (e)(1) through (e)(4) must be construed as providing an option for a remedy that the court may impose.  Accordingly, he asserts that subdivisions (e)(1) and (e)(2) provide only *some* of the remedies that may be imposed in the prejudgment and postjudgment violation contexts, while subdivisions (e)(3) and (e)(4) are intended to apply in either context and subdivision (e)(4) incorporates all remedies into the RJA.

We do not disagree with the minor that section 745, subdivision (e)(4) applies in both the prejudgment and postjudgment context.  But while the Legislature referred to "the following list" in subdivision (e), it did not expressly provide that subdivision (e)(4) was intended to incorporate all available remedies into the RJA.  As we discussed *ante*, the text of subdivision (e)(4) does not demonstrate such an intent.  Additionally, when considering subdivisions (e)(1) through (e)(4) together, it becomes clear that the minor's argument contradicts the plain language of the statute.  Subdivisions (e)(1) and (e)(2) of section 745 expressly provide a limited set of remedies applicable to remedy prejudgment

14

(subd. (e)(1)) and postjudgment (subd. (e)(2)) RJA violations.[6] To construe subdivision (e)(4) as incorporating all remedies under the law (rather than merely clarifying that those other remedies remain available) would render the limited remedies provided for in subdivisions (e)(1) and (e)(2) superfluous. For example, if subdivision (e)(4) authorized the court to impose any remedy under law for a prejudgment violation, there would be no need for subdivision (e)(1)(C) to identify available remedies as dismissing enhancements, special circumstances, or special allegations, or reducing one or more charges, because subdivision (e)(4) would already authorize each of those remedies. (See, e.g., Pen. Code, §§ 17, subd. (b) [reduction]; 1385 [dismissal]; Welf. & Inst. Code, §§ 700.3 [reduction]; 782 [dismissal of wardship petition in the interest of justice].)

The minor argues that the permissive language in section 745, subdivision (e)(1)--providing that the court "may impose any of the following remedies"--demonstrates the legislative intent to authorize the court to impose any remedy authorized by law pursuant to subdivision (e)(4). But again, were subdivision (e)(4) properly construed as incorporating all remedies provided by all laws into the RJA, there would be no need to enumerate specific remedies under subdivision (e)(1). Further, as we explain in greater detail *post*, the permissive language in subdivision (e)(1) is properly construed as conferring discretion on the juvenile court to impose or to *not impose* a remedy, where it is not in the interest of justice to do so.

Contrary to the minor's arguments, echoed by our dissenting colleague (dis. opn., *post*, at pp. 3-4), our construction of the statute neither omits section 745, subdivision (e)(4) from the law nor leaves some RJA violations without a remedy. To the extent the minor believes the adequate remedies are provided for outside of the RJA, subdivision

---

[6] As we discuss *post*, the legislative history makes clear that the Legislature initially included dismissal of one or more charges as a remedy for a prejudgment violation, but revised that specific remedy out of subsequent versions of the statute.

(e)(4) clarifies that he is not precluded from seeking a remedy otherwise provided for by law.[7]  While the dissent asserts that the minor had no opportunity to present evidence or argue why dismissal was an appropriate remedy (dis. opn., *post*, p. 5), the minor orally moved for dismissal under Welfare and Institutions Code section 782, or alternatively to reduce the felony charges to misdemeanors under Welfare and Institutions Code section 700.3.  The juvenile court declined to rule on those motions only because they had not been properly noticed and calendared, not because it would refuse to consider them.  The availability of such remedies even when not specifically provided for in the RJA refutes the minor's argument that our construction of the statute will result in "many miscarriages of justice."[8]

Considering the language of section 745, subdivision (e)(4) and the statute as a whole, we conclude the RJA does not authorize dismissal of one or more charges as a remedy.  Rather, subdivision (e)(4) clarifies that the remedies provided for by the RJA do not preclude the minor from seeking relief under other statutes or constitutional provisions.

---

[7] Our dissenting colleague notes that it does not appear Judge Shephard was disqualified following the RJA violation.  (Dis. opn., *post*, at p. 5, fn. 1.)  We add that the record does not reflect any attempt to disqualify him.  Under our analysis of the statute, the minor would have been authorized to seek disqualification under Code of Civil Procedure sections 170.1 and 170.3, pursuant to subdivision (e)(4) of Penal Code section 745.  To the extent the dissent suggests that we reach a different conclusion, one that leaves the minor without a potential remedy of disqualification, we disagree.  (See dis. opn., *post*, at p. 5.)

[8] Our dissenting colleague opines that the oral motion "was sufficient to put the court and the People on notice that minor was asking for the remedy of dismissal for the RJA violation that was sustained here."  (Dis. opn., *post*, pp. 4-5.)  But notice is not at issue in this appeal.  At issue is the juvenile court's determination that absent a proper invocation of another provision of law, as permitted by section 745, subdivision (e)(4), the RJA *alone* does not provide for dismissal as a remedy for a prejudgment violation.

16

"Ordinarily, if the statutory language is clear and unambiguous, there is no need for judicial construction." (*California School Employees Assn. v. Governing Board* (1994) 8 Cal.4th 333, 340.) "It is an established principle that where statutory language is unambiguous, a court is precluded from considering legislative history. (See, e.g., *People v. Robles* (2000) 23 Cal.4th 1106, 1111 ['If the language contains no ambiguity, we presume the Legislature meant what it said, and the plain meaning of the statute governs. [Citation.] If, however, the statutory language is susceptible of more than one reasonable construction, we can look to legislative history in aid of ascertaining legislative intent.'].) . . . [T]he plain meaning rule does not prohibit a court from determining whether the literal meaning of a statute comports with its purpose. [Citation.] Courts have therefore considered legislative history even in cases where the text of a statute is clear; but only to confirm the interpretation already apparent from the plain language, not to advance an alternative meaning." (*Huff v. Securitas Security Services USA, Inc.* (2018) 23 Cal.App.5th 745, 755.) We do so here.

As originally proposed, Assembly Bill No. 2542 provided the following remedies for a prejudgment RJA violation: "the court may reseat a juror removed by use of a peremptory challenge, declare a mistrial, discharge the jury panel and empanel a new jury, or dismiss or reduce one or more charges. Monetary sanctions and training alone are not sufficient as a remedy." (Sen. Amend. to Assem. Bill No. 2542 (2019-2020 Reg. Sess.) Jul. 1, 2020.) In the subsequent version of the bill, the statutory language "dismiss or reduce one or more charges" was revised to authorize the court to "dismiss enhancements, special circumstances, or special allegations, or reduce one or more charges." (Sen. Amend. to Assem. Bill No. 2542, *supra*, Aug. 1, 2020.) The provision was further amended to provide the court with the discretion to impose one or more of those remedies if in the interest of justice. (Sen. Amend. to Assem. Bill No. 2542, *supra*, Aug. 20, 2020.) As the legislative history demonstrates, the Legislature specifically removed dismissal of one or more charges as a remedy for a prejudgment RJA violation,

17

which confirms our plain language interpretation of the statute. " ' "Generally the Legislature's rejection of a specific provision which appeared in the original version of an act supports the conclusion that the act should not be construed to include the omitted provision." ' " (*People v. Walker* (2024) 16 Cal.5th 1024, 1034.)

The minor argues that the Legislature's amendment of Assembly Bill No. 2542 to omit dismissal of one or more charges as a remedy for a prejudgment violation demonstrates only that the Legislature intended for section 745, subdivision (e)(4) to authorize dismissal in both the prejudgment and postjudgment violation contexts. In other words, he asserts that by amending subdivision (e)(1) to *not* identify dismissal as a remedy for a prejudgment RJA violation, the Legislature actually intended to authorize dismissal as a remedy under *both* subdivisions (e)(1) and (e)(2). We reject that argument. If the Legislature intended for subdivision (e)(4) to authorize dismissal in the postjudgment context, there is no reason why it would need to remove dismissal as a remedy from subdivision (e)(1). (§ 745.) Moreover, if the Legislature intended for subdivision (e)(4) to authorize the court to impose *any and every* remedy available under any provision of law for a prejudgment or postjudgment RJA violation, there would be no need to change subdivision (e)(1)(C) and replace dismissal of charges as a remedy with the more limited authority to dismiss only enhancements, special circumstances, or special allegations. This is because *all* types if dismissals would be remedies authorized by subdivision (e)(4).

Instead, the Legislature's revision to the statute confirms our interpretation and further supports our conclusion that dismissal may be a remedy for a prejudgment RJA violation only if requested under the authority of the state or federal constitution or "any other law" and accompanied by the requisite showing under that authority.

B. *Abuse of Discretion Claim*

As we have set forth, *ante*, in making its ruling the juvenile court declined to reduce the charges against the minor under section 745, subdivision (e)(1)(C), finding it

18

was not in the interest of justice to do so, although inviting a noticed motion to do so under a different statute. By not imposing a remedy, the court implicitly concluded that the RJA does not compel imposition of a remedy upon a finding of a prejudgment violation.

The minor contends the juvenile court abused its discretion in declining to impose a remedy for the violation, arguing that the appearance of the word "shall" in section 745, subdivision (e) compels imposition of a remedy (a position with which the dissent agrees). As I will explain, I disagree that the use of "shall" in this context (i.e., immediately before the words "impose a remedy specific to the violation") mandates imposition of a remedy, and instead conclude that the quoted language requires that any remedy imposed be specific to the violation. My concurring colleague sets forth his own analysis of the statutory language at issue here, but agrees that the appearance of the word "shall" in section 745, subdivision (e) does not compel imposition of a remedy in this case. (Conc. opn., *post*, at pp. 1, 3.)

Initially, the minor's position that a remedy is required in all instances of an RJA violation fails to account for the discretionary language contained in section 745, subdivision (e)(1). Specifically, subdivision (e)(1) provides that in the context of prejudgment violations "the court *may* impose any of the following remedies [(A)-(C)]," and subdivision (e)(1)(C) provides, "[i]f the court determines that it would be in *the interest of justice*, [it may] dismiss enhancements, special circumstances, or special allegations, or reduce one or more charges." (§ 745, subd. (e)(1)(C), italics added.) "Ordinarily, when a statute provides a court 'may' do something, the statute is permissive, not mandatory, and grants the court a discretionary authority." (*Renda v. Nevarez* (2014) 223 Cal.App.4th 1231, 1237.)

When considered in conjunction with section 745, subdivision (e)(1), subdivision (e) does not require a remedy for all prejudgment violations. (See *Taxpayers to Limit Campaign Spending v. Fair Pol. Practices Com.* (1990) 51 Cal.3d 744, 764 [principles of

19

statutory interpretation require courts to "reconcile or harmonize conflicting statutory provisions in an effort to give effect to all provisions if it is possible"].)  Subdivision (e) contains the preliminary requirement that upon finding a violation the court "shall impose a remedy" that is specific to the violation.  Consistent with the discretion conferred by subdivision (e)(1), subdivision (e) is most naturally read to require that *if* a remedy is imposed by the juvenile court, that remedy must be specific to the violation.  In other words, as broadly stated by subdivision (e)--prior to setting forth the enumerated lists of prejudgment and postjudgment remedies contained in subdivisions (e)(1) and (e)(2), followed by prohibition of death sentences in subdivision (e)(3) and clarification of continued availability of other constitutional and statutory remedies in subdivision (e)(4)--*any* remedy that is imposed must be specific to the violation.  (§ 745.)  However, if there is not a remedy specific to the particular violation, or imposition of a remedy under subdivision (e)(1)(C) would not be in the interest of justice, the court retains discretion to decline to impose a remedy.  That is what the juvenile court did here.

The Legislature's express intent in passing the RJA is consistent with the plain language of the statute.  The intent of the RJA was to "eliminate racially discriminatory practices in the criminal justice system" (Assem. Bill No. 2542, § 2, subd. (j)) and "to ensure that race plays no role at all in seeking or obtaining convictions or in sentencing" (*id.*, subd. (i)).  The Legislature added that the intent of the RJA was not to *punish* implicit bias, "but rather to remedy the harm to the *defendant's case* and to the integrity of the judicial system." (*Ibid.*, italics added.)  Combined, these statements demonstrate the legislative intent to ensure that juvenile court proceedings occur on a race-neutral basis, and to accomplish that goal without *punishing* instances of bias, but rather by remedying the specific harm the violation caused to the defendant's case.  In the prejudgment violation context, the statute requires that any remedy imposed be specific to the violation that has occurred, but expressly confers on the juvenile court the

20

discretion to determine whether imposing any of the enumerated remedies is necessary to advance the aims of the statute.

Here, the juvenile court thoughtfully determined that the remedies enumerated in section 745, subdivision (e)(1)(A)-(B) did not apply to the minor's case, a conclusion the minor does not challenge on appeal. The court further determined that it would not be in the interest of justice to impose a remedy under subdivision (e)(1)(C), also finding that the remedies contained therein were not specific to the adjudicated RJA violation. (See § 745, subd. (e) ["the court shall impose a remedy specific to the violation"].)

With the understanding that subdivision (e) of section 745 required the juvenile court to impose a remedy, if any, that was specific to the violation, and that subdivision (e)(1) provided the court with discretion to impose or decline to impose the listed remedies in the case of a prejudgment violation, I see no abuse of discretion in the court's decision to deny the minor's request for a reduction of one or more charges as a remedy for the RJA violation. The same judge who had adjudicated the RJA violation found that reduction of the charges against the minor was not, in this instance, a remedy specific to the violation, and the interest of justice would not be served by reducing the charges. This finding is supported by the record: Judge Shepard made the comments that resulted in the finding of an RJA violation when denying the minor release. The minor was released one week later; thus, he achieved the outcome he had sought at the hearing where the violation occurred. In effect, absent evidence of more widespread harm to the integrity of the judicial system that does not appear in the record, the minor's subsequent release effectively remedied the violation--inappropriate comments reflecting inappropriate considerations--that occurred while denying the minor release. The record does not demonstrate (and the minor does not argue) that the proceedings against him following the hearing at which the RJA violation occurred were anything other than race-neutral, or that the effect of Judge Shepard's comments tainted the proceedings such that an additional remedy is required to ensure that the minor's race plays no role in the

proceedings. There is no evidence that racial animus or bias has affected or will affect the minor's jurisdictional or, if necessary, dispositional hearings. Nor is there any suggestion that Judge Shepard's comments in any way affected the minor's ability to defend himself against the pending juvenile petition. Rather, the effect of the comments appears to have been confined to the result of the hearing during which the comments were made, which was effectively reversed less than a week after the ruling. Thus, the record more than adequately supports the juvenile court's findings and the discretionary ruling that followed.

The minor further argues that the juvenile court was required to impose a remedy, regardless of the availability of a remedy specific to the violation, because the RJA violation constituted a miscarriage of justice under article VI of the California Constitution. He posits that the juvenile court improperly applied a harmless error analysis when it pointed out that the visiting judge would no longer be involved in the proceedings, and that the minor was released from custody soon after the RJA violation occurred.

I disagree that the juvenile court applied a harmless error analysis to the RJA violation here. Instead, the court's decision to not impose a remedy in the wake of the adjudicated violation was based on its determination that there was no listed remedy specific to the violation and that imposition of a listed remedy was not in the interest of justice, not that the violation itself was harmless. The court invited requests and briefing regarding remedies that might be available for this violation under other provisions of law (see § 745, subd. (e)(4)); the minor made no briefed requests for other remedies despite the court's invitation to do so. On this record, the minor has not established a miscarriage of justice. (Cal. Const. art. VI, § 13.) Given the intent of the RJA to eliminate bias from California's juvenile justice system, and its requirement any remedy be specific to the violation, it would make no sense for this court to require the juvenile court to fashion and impose a remedy where it finds no remedy specific to the violation

22

and where the exhibited bias at issue had already been neutralized by reversing the ensuing decision.

The RJA confers discretion on courts to impose remedies specific to the violation after a prejudgment violation has been found.  With its findings that there was no remedy specific to the violation and that imposition of a listed remedy would not be in the interest of justice, the juvenile court properly exercised that discretion here.  I find no error.

## DISPOSITION

The petition for writ of mandate is denied.


                                    _____/s/_____
                                    Duarte, Acting P. J.

RENNER, J., Concurring.

I concur with the lead opinion's conclusions in Part I and Part II.A.  I disagree with the analysis contained in Part II.B, and I write separately to explain why the minor's assertion that the court erred by not imposing a remedy in this proceeding is without merit.  The dissent and minor focus on the mandatory nature of the court's obligations under section Penal Code section 745, subdivision (e)—and the word "shall"—but this analysis misses the forest for one single tree.[1]  (See *Lungren v. Deukmejian* (1988) 45 Cal.3d 727, 735 ["The meaning of a statute may not be determined from a single word or sentence"].)  Here, section 745, subdivision (e) provides, in relevant part:

"[I]f the court finds, by a preponderance of evidence, a violation of subdivision (a), the court *shall* impose a remedy specific to the violation found *from the following list*:

"(1) Before a judgment has been entered, the court may impose any of the following remedies:

"(A) Declare a mistrial, if requested by the defendant.

"(B) Discharge the jury panel and empanel a new jury.

"(C) *If the court determines that it would be in the interest of justice*, dismiss enhancements, special circumstances, or special allegations, or reduce one or more charges.

"(2) (A) After a judgment has been entered, if the court finds that a conviction was sought or obtained in violation of subdivision (a), the court shall vacate the conviction and sentence, find that it is legally invalid, and order new proceedings consistent with subdivision (a).  If the court finds that the only violation of subdivision (a) that occurred is based on paragraph (3) of subdivision (a), the court may modify the judgment to a

---

[1] Further undesignated statutory references are to the Penal Code.

1

lesser included or lesser related offense.  On resentencing, the court shall not impose a new sentence greater than that previously imposed.

"(B) After a judgment has been entered, if the court finds that only the sentence was sought, obtained, or imposed in violation of subdivision (a), the court shall vacate the sentence, find that it is legally invalid, and impose a new sentence. On resentencing, the court shall not impose a new sentence greater than that previously imposed.

"(3) When the court finds there has been a violation of subdivision (a), the defendant shall not be eligible for the death penalty.

"(4) The remedies available under this section do not foreclose any other remedies available under the United States Constitution, the California Constitution, or any other law."  (Italics added.)

The remedies listed in section 745, subdivision (e)(1)(A)-(B), (2), and (3) cannot apply factually to this proceeding.  There was no trial, no jury, no judgment, and no death penalty eligibility to set aside.  This leaves only section 745, subdivisions (e)(1)(C) and (e)(4) as possible sources of a remedy.  A reduction in charges under section 745, subdivision (e)(1)(C) was authorized by statute only if the court found this reduction was "in the interest of justice," but it did not, and neither minor nor the dissent offer any argument that this finding was an abuse of discretion.  To the extent minor is suggesting that the obligation to impose a remedy eliminates the requirement that a remedy under section 745, subdivision (e)(1)(C) be "in the interest of justice," I cannot agree.  Finally, section 745, subdivision (e)(4) does "not foreclose any other remedies available under . . . any other law," but minor's petition does not argue or demonstrate dismissal (or any other remedy he seeks) was authorized or available under any other law.

This case is unique because a remedy has been effectively granted in that the judge who committed the violation is no longer part of these proceedings without the need of a formal order on the issue.  Indeed, there is no indication the minor asked for one.  I disagree with minor's suggestion that the court found the violation here harmless error.

2

Rather, this situation is peculiar. Most important, from my perspective, is that almost all the remedies listed by section 745 are factually impossible to order *and* minor has never identified any remedy he is entitled to. I do not suggest there is no room for judicial creativity under section 745 or that the court's authority to remedy judicial bias and ensure the integrity of the judicial system should be construed narrowly. But the court's authority also cannot exceed the obvious constraints the Legislature has chosen to impose. Specifically, I cannot read "shall impose" separately from the specific remedies, and the limits placed on them (e.g., dismissals under § 745, subd. (e)(1)(C) require a determination they are "in the interest of justice"), contained in section 745. For this reason, I agree with the lead opinion that the petition should be denied.

_____/s/_____
Renner, J.

.

3

MESIWALA, J., Dissenting.

The lead opinion has appeal. The Racial Justice Act (RJA) (Assembly Bill 2542) (2019-2020 Reg. Sess.) (Stats. 2020, ch. 317) violation occurred when a visiting judge denied minor's request for electronic monitoring release. One week later, the regularly-assigned judge granted minor's request. The appeal is that minor was given what he asked for, so no other action is required. Indeed, I was on the panel that summarily denied minor's petition for writ of mandate. But our Supreme Court granted minor's request for review and transferred the matter back to us with directions to vacate the denial and issue an order to show cause why the relief minor sought should not be granted.

Upon further consideration, the following rationale requires me to dissent: (1) under the plain language of the RJA, the court *must* impose a remedy when it finds an RJA violation; (2) dismissal is an available remedy under the RJA and was requested by minor *for the RJA violation* here; (3) minor was not given the opportunity to factually develop why dismissal was required here to remedy the harm to his case and the harm to the integrity of the judicial system; and (4) a reviewing court cannot make such a factual record, so remand is required. I explain this rationale in more detail below.

When a court finds a violation of the RJA, the court "*shall* impose" a remedy. (Pen. Code, § 745, subd. (e), italics added; further undesignated statutory references are to the Penal Code.) The lead opinion concludes this mandatory language (see *Puerta v. Torres* (2011) 195 Cal.App.4th 1267, 1272 ["[t]he term 'shall' is mandatory"]) is not mandatory in the case of a prejudgment RJA violation because the RJA specifies that in the prejudgment context, the court "*may* impose" certain remedies. (§ 745, subd. (e)(1), italics added.)

But the term "may" in the prejudgment context cannot be read in isolation. (See *People v. Mazur* (2023) 97 Cal.App.5th 438, 445 [statutory phrases cannot be read in isolation, and statutes must be construed as a whole].) Construed as a whole, section 745

1

makes clear that a remedy specific to the violation must be imposed. The word "may" that follows does not eliminate that mandate. This conclusion is compelled by the legislative history of the RJA. (See *Tarrant Bell Property, LLC v. Superior Court* (2011) 51 Cal.4th 538, 542 [to determine whether the Legislature intended a statute to be mandatory or permissive, use of "may" or "shall" is merely indicative, not dispositive or conclusive; we properly consider the legislative intent].) In adopting the RJA, the Legislature's message was clear: "It is the intent of the Legislature to eliminate racial bias from California's criminal justice system" and "remedy the harm to the defendant's case and to the integrity of the judicial system." (Stats. 2020, ch. 317, § 2, subd. (i).) And it is the "further intent of the Legislature to provide remedies that will eliminate racially discriminatory practices in the criminal justice system . . . ." (*Ibid*., subd. (j); see also Sen. Com. on Public Safety, Analysis of Sen. Bill No. 2542, as amended August 1, 2020, p. 7 ["[w]e can no longer accept racial bias in the criminal justice system as unfixable"].) Thus, the intents of the RJA include: (1) eliminating racial bias from California's criminal justice system; (2) remedying the harm to the defendant's case and to the integrity of the judicial system; and (3) providing remedies that eliminate racially discriminatory practices.

Given these intents, it does not make sense to me that a remedy would only be required if the RJA violation occurred *after* a judgment is entered (because the Legislature used the word "shall" to identify the remedy in that instance (§ 745, subd. (e)(2))), but a remedy would not be required if the RJA violation occurred *before* a judgment is entered (because the Legislature used the word "may" to identify certain remedies in that instance (§ 745, subd. (e)(1))). To me, a different interpretation that conforms to the RJA's intents explains the use of "may" for the prejudgment violations and "shall" for the postjudgment violations. Each of the subdivisions specific to postjudgment violations (§ 745, subd. (e)(2)(A), (B)) identifies how the court must respond, while the subdivision concerning prejudgment violations (§ 745, subd. (e)(1))

2

gives the court different choices (and as explained *post*, those choices are not to the exclusion of others available by law). Those choices do not eliminate the overarching language mandating a remedy. In other words, the court has different choices regarding the remedy when there is a prejudgment violation, but a remedy that is specific to the violation must still be chosen.

I also depart as to the remedies available for an RJA violation. Section 745, subdivision (e) specifies that the remedy imposed must be chosen from "the following list." That list consists of four paragraphs. But the lead opinion concludes that the fourth paragraph is not part of the list. I disagree. The fourth paragraph specifies that the court is not limited to the remedies identified in the first three paragraphs but may impose a remedy available under any other law. This is consistent with the plain language of the statute, and it also makes sense given the intents of the RJA. (See *Dyna-Med, Inc. v Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1387 [the words of a statute must be construed in context, keeping in mind the statutory purpose].) It does not make sense to me that the Legislature intended to eradicate racial bias in the justice system but limited courts to the remedies listed in paragraphs (1) through (3). The remedy "specific to the violation" in any given case will depend on the unique circumstances of that case and can be best identified in the first instance by the trial judge after hearing from the parties. A "one-size-fits-all" approach is particularly inappropriate in a juvenile proceeding like the one at issue here, given that the juvenile justice system is different from the adult system. (*In re J.M.* (2019) 35 Cal.App.5th 999, 1006; *In re T.C.* (2009) 173 Cal.App.4th 837, 850.)

Furthermore, as minor noted at oral argument on appeal, a narrow construction of what remedies are available would leave some RJA violations without a remedy. The example minor provided at oral argument illustrates this point: "Let's say that it was proven that a prosecutor only filed misdemeanor resisting arrest charges against persons identified as Black. That would be a violation of subdivision (a)(3). However, under

3

subdivision[] (e)(1) through (3), there would be no remedy for that violation" because "there would be no way to reduce that charge." Such a result defies the intents of the RJA and compels the conclusion that dismissal is a potential remedy for a prejudgment RJA violation.

To reach the opposite conclusion, the lead opinion also relies on an earlier version of Assembly No. 2542 that would have explicitly empowered a trial court to "dismiss or reduce one or more charges" as a remedy for a prejudgment RJA violation. (Assembly Bill No. 2542, as amended July 1, 2020.) But the Legislature's failure to enact a particular provision in a bill is "of little assistance in determining the intent of the Legislature." (*American Financial Services Assn. v. City of Oakland* (2005) 34 Cal.4th 1239, 1261-1262; see *Department of Corrections & Rehabilitation v. State Personnel Bd.* (2014) 227 Cal.App.4th 1250, 1261.) "When it is known only that the provision was not enacted, there is no basis for inferring, for example, that the provision was not enacted because it was believed to be superfluous, or, alternatively, that it was not enacted because the Legislature believed it to be bad policy." (*Spaccia v. Superior Court* (2012) 209 Cal.App.4th 93, 110.) This is particularly true here where the Legislature's amendment to the dismissal provision was accompanied by the addition of paragraph (4) to section 745, subdivision (e) that authorizes the trial court to impose a remedy available under any other law. In these circumstances, the language regarding dismissal of the charges is "unnecessary in view of the broad language of the act as finally passed." (*Burks v. Poppy Construction Co*. (1962) 57 Cal.2d 463, 469.)

The lead opinion also suggests that dismissal could be a remedy for an RJA violation but only where minor takes the extra procedural step of filing and calendaring a motion specific to that remedy. But here, minor sought the remedy of dismissal for the sustained RJA violation and cited in support of that remedy the law specific to dismissal in a juvenile proceeding. (Welf. & Inst. Code, § 782.) This was sufficient to put the

4

court and the People on notice that minor was asking for the remedy of dismissal for the RJA violation that was sustained here.

I close by returning to the appealing notion that the RJA violation in minor's case was effectively remedied because: (1) the regularly-assigned judge reversed the visiting judge's order that was tainted by racial bias; and (2) the visiting judge will not be involved in the case in the future. Reconsideration of a motion and disqualification of a judge[1] are not remedies listed in section 745, subdivision (e)(1) through (3). They do, however, translate to remedies that fall within section 745, subdivision (e)(4). (See, e.g., *People v. Konow* (2004) 32 Cal.4th 995, 1020 [reconsideration]; Code Civ. Proc., §§ 170.1, 170.3 [judge disqualification].) The idea that the RJA violation here was effectively remedied works only if section 745, subdivision (e)(4) is interpreted to have the meaning minor suggests. In accordance with that meaning, minor insisted that the proper remedy for the RJA violation here was dismissal of the charges, but he had no opportunity to present evidence or argue why that remedy was factually appropriate or better suited "to remedy the harm to [his] case *and to the integrity of the judicial system*" as the Legislature specified as intents when enacting the RJA. (Stats. 2020, ch. 317, § 2, subd. (i), italics added.) In my view, the juvenile court erred by failing to give him that opportunity. I would remand for the juvenile court to correct that error. (See *People v. Contreras* (2015) 237 Cal.App.4th 868, 892 [appellate court will not review an issue in the first instance that requires factual findings on an undeveloped record].)


/s/
Mesiwala, J.

---

[1] It does not appear that the visiting judge was disqualified following the RJA violation.